ARLINGTON MFG. CO. v. NORWICH UNION FIRE INS. CO.

(Circuit Court of Appeals, Second Circuit. April 3, 1901.)

No. 118.

FIRE INSURANCE—ACTION FOR LOSS—MANUFACTURING PLANT—POLICIES—CONSTRUCTION—ADDITIONAL BUILDINGS—QUESTION FOR COURT.

Policies were issued by defendant on plaintiff's manufacturing plant, describing it by a plan referred to confining it to buildings designated thereon by specified numbers, and to the machinery, tools, and other articles mentioned as "contained in or attached" to these buildings. Privileges allowed "additions, alterations, and repairs," which the policy was to cover. *Held*, that the "additions, alterations, and repairs" re-

ferred to property described in the policies, which clearly excluded a separate building unconnected with the others specified therein and in course of erection at the time they were issued; and hence, in an action for its loss, the court properly refused to submit to the jury the question whether the policies were intended to cover additional buildings erected from time to time.

In error to the Circuit Court of the United States for the Southern District of New York.

George Richards and John G. Carlisle, for plaintiff in error.

Wm. B. Ellison, for defendant in error.

Before WALLACE, Circuit Judge, and THOMAS, District Judge.

WALLACE, Circuit Judge. The plaintiff in error was the plaintiff in the court below, and by its assignments of error impugns the rulings of the trial judge excluding evidence offered upon its behalf, and in not directing the jury to render a verdict in its favor for a part of the recovery sought in the action. The action was brought upon two policies issued by the defendant, dated, respectively, January 31, 1898, and February 1, 1898, and each insuring the plaintiff against loss by fire in the sum of $5,000 for the term of one year. The property insured by the policies was described therein as follows:

"On property known as the Arlington Manufacturing Co., manufacturers of pyraline, a substitute for celluloid goods, situate in Arlington, Hudson county, New Jersey. Plan on file with Ward Phillips, 56–58 Pine street, New York, to which all numbers of buildings refer."

"Buildings, Machinery, and Stock:

"On brick and frame buildings, sheds, additions, and attachments, marked Nos. 1 to 7, 9, and 11 to 16 (including smokestack), on plan; on fixed and movable machinery and machines of every description, and parts of same, engines, boilers, and connections, heating apparatus, fixtures, apparatus, office and factory furniture and fixtures of every description, safes, hose, automatic sprinkler equipment, dynamo, electric equipment, shafting, belting, pulleys, hangers, gearing, piping, pumps, hydraulic presses, tanks, dies, tools, implements of all kinds, patterns, utensils, and machinery supplies; on pyraline, manufactured, unmanufactured, and in process of manufacture, and materials of all kinds used in the manufacture of the same; and on all other property belonging to the business of the assured, their own, or held in trust or on commission, or sold but not delivered or removed,—all contained in or attached to the above-described buildings, sheds, and building marked No. 10 on the plan."

The policies also contained the usual co-insurance clause, and the following clause:

"Privileges:

"Privileged to use electric lights in the above-mentioned premises, to work nights when necessary, and to make additions, alterations, and repairs, and this policy to cover the same, and therein, and to use such materials and apparatus incidental to their business."

It appeared upon the trial that at the date when the policies were issued the plan on file with Ward Phillips showed the various buildings then comprising the manufacturing establishment of the plaintiff, being a group of 16 separate buildings, numbered on said plan from 1 to 16, respectively. When the policies were issued, the plaintiff had commenced the erection of another building, located some 30 or 40 feet to the east of the building designated on the plan as No.

11, upon a vacant lot, which the plaintiff had purchased in the preceding August. This new building was of brick, 145 by 84 feet in dimensions. It was completed in March, 1898, and the machinery from No. 11 was then removed into it, and it was thereafter occupied and used by the plaintiff as a part of its manufactory until the time of the fire. It was not physically attached to or connected with any of the other buildings. The new building was not shown on the Ward Phillips plan. April 30, 1898, it and its contents were damaged by fire; the loss on the building being $7,664, on the machinery therein $9,319, and on the stock $24,231.

It appeared in evidence that for many years the plaintiff had carried insurance upon the buildings and plant of its manufacturing concern with a large number of underwriters; that the different branches of its business were conducted in separate buildings; that new buildings were from time to time erected as the demands of the business required, and were used as part of the concern; that the plaintiff had obtained its insurance through two brokers, Ward Phillips and Mr. Van Valen; that the rate of premiums had been fixed by the Underwriters' Association of the Middle Department; that the defendant was a member of that association; that the Van Valen policies insuring the property were blanket policies, covering all the buildings and plant, without reference to any plan or specified description; and that the Ward Phillips policies were all in form like the two policies in suit.

The plaintiff offered to prove upon the trial that March 16, 1897, the Underwriters' Association fixed the rate of premiums for the insurance upon the buildings and plant, etc., of the plaintiff, specifying the rates upon the various buildings and their contents separately, and the rate upon the blanket policies, and on that date sent a notice to the defendant containing the rates; that in this notice there was a statement that it was understood that building No. 11 would be replaced by a brick building; that the premiums in the policies in suit were at the blanket rate specified in the notice; and that after the completion of the new building the Underwriters' Association examined it, and made no change in the premium rates of blanket policies. The trial judge excluded evidence of these facts, and the plaintiff duly excepted. At the close of the evidence the trial judge ruled that plaintiff was not entitled to recover for that part of the loss accruing from the damage by fire to the new brick building and its contents, and directed a verdict accordingly, and the plaintiff duly excepted, and asked to go to the jury upon the question whether it was not the intent of the parties that the insurance should cover additional buildings which should be erected from time to time.

We are of the opinion that the trial judge ruled correctly in excluding the evidence offered, and in directing a verdict as he did.

It did not appear that the defendant had ever issued any policy upon the property of the plaintiff prior to the first of the two in controversy, but, if this had been shown, together with the other facts proved or offered to be proven in evidence, inasmuch as by the policies in suit the parties had limited the risk to the buildings and property described therein, and there was no ambiguity in the descrip-

tion or other terms, it would not have altered the legal effect of the contract conclusively evidenced by the instruments. For the same reason it was quite immaterial that the other underwriters had issued policies which, read in the light of the surrounding circumstances, would have extended to cover the loss in controversy. Where the question is whether the property destroyed by fire is embraced within the terms of the policy, it is always competent, in contracts of doubtful interpretation, to give evidence of extraneous facts which will place the court in the situation of the parties when the contract was made, in order to enable it to be read understandingly; and in this view, if the action had been brought upon policies of the Van Valen form, the extraneous facts which were proved, or were offered to be proved, would have been of value in determining whether the insurance covered the new building as an addition, and, indeed, would have resolved such an inquiry quite conclusively in favor of the plaintiff. But the policies in suit were not expressed in any uncertain terms, and the property described as covered by the insurance was definitely and unmistakably pointed out by reference to the plan on file with Ward Phillips, and confined to the buildings designated on that plan by specified numbers, and to the machinery, tools, and other articles mentioned as "contained in or attached" to these buildings. The privilege to make "additions, alterations, and repairs" refers manifestly to the property which is described in the policy, and cannot be read as intending to permit the insurance to extend to them when made to other property. The meaning of the policy is emphasized, if that were possible, by the exclusion of the building "marked No. 10 on the plan" from the description of the property insured. The trial judge properly held that the construction of the policy was purely a matter of law, and that there was no question of fact for the jury.

The new building was in no sense an addition to No. 11, or to any of the property described in the policy. The evidence was that it was not physically connected with or attached to any part of that property, but was a separate and independent building; and no evidence was given tending to show that any of the machinery within it was connected with any of that used in the other buildings. A construction of the privilege clause which would extend its provisions to include such a building is wholly unwarranted upon principle or by precedent. Especially would such a construction be inadmissible when it appears that the new building was in process of erection at the date of the issue of the policies, the contract being plainly expressed to extend the insurance only to certain designated buildings and their contents. We have examined the authorities cited for the plaintiff in error, but none of them justify its contention, and it is unnecessary to discuss or to refer to them. The adjudication most nearly in point is Peoria Sugar-Refining Co. v. People's Fire Ins. Co. (C. C.) 24 Fed. 773, and that is adverse to the contention. In that case the new building was connected with the insured building by a bridge and an underground passage used for pipes, and was located about the same distance from the main factory as was the new building in the present case; but the court held that, being a new and

separate building, it was "not an addition," and the insurance did not extend to it under a clause similar to that in the present policies.

The assignments of error are not well founded, and the judgment is affirmed.