For the reasons stated, I respectfully dissent from the judgment here given.

---

## ST. PAUL FIRE & MARINE INS. CO. v. BALFOUR et al.

(Circuit Court of Appeals, Ninth Circuit. February 23, 1909.)

### No. 1,526.

1. CUSTOMS AND USAGES (§ 15*) — CONSTRUCTION OF CONTRACT — EVIDENCE TO AID CONSTRUCTION.

On application of plaintiffs, defendant delivered to them a memorandum with a "rider" attached which certified that defendant had insured them "under policy No. 7522" against war risks only on a flour cargo shipped from Portland, Or., to Japanese ports on the steamship Arabia. In fact, no policy numbered 7,522 or otherwise was executed to plaintiffs. *Held*, that there was a latent ambiguity in the memorandum as it read, with its reference to the policy, which it was competent to explain by parol, and that evidence was admissible to show a custom in such cases that the standard form of policy in use by the insurance company was understood to be referred to and to be a part of the contract, being retained by the company in its office, such evidence not being inconsistent with the writing.

[Ed. Note.—For other cases, see Customs and Usages, Cent. Dig. §§ 30–33; Dec. Dig. § 15;* Evidence, Cent. Dig. §§ 1945–1952.]

2. INSURANCE (§ 669*) — ACTION ON POLICY — INSTRUCTIONS — AVOIDANCE FOR CONCEALMENT.

In an action on a marine insurance policy, the instructions, taken as a whole, *held* to state the correct rule as to concealment by the insured which would avoid the contract.

[Ed. Note.—For other cases, see Insurance, Dec. Dig. § 669.*].

In Error to the Circuit Court of the United States for the Northern District of California.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Milton Andros and F. R. Wall, for plaintiff in error.

Nathan H. Frank, for defendants in error.

Before GILBERT and ROSS, Circuit Judges, and DE HAVEN, District Judge.

DE HAVEN, District Judge. This case is before us on a writ of error, and the action is one which was brought by the defendants in error (who for greater convenience will be hereafter, in this opinion, referred to as plaintiffs) to recover from the plaintiff in error (hereinafter called the defendant) the sum of $6,100 on a general policy of marine insurance.

The complaint contains two causes of action: One to recover $4,-350, on account of the alleged loss of 5,000 sacks of flour carried by the German ship Arabia on a voyage from Portland, Or., to Kobe, Japan; the other to recover $1,750, on account of alleged loss of 2,000 sacks of flour shipped on the same vessel, on the same voyage, from Portland, and to be carried to Nagasaki, Japan.

The complaint, in stating each cause of action, alleges that the insurance was "on account of concerned" and was on flour "lost or not lost," and that in case of loss the amount for which the same was insured was to be paid to the order of the plaintiffs; that the contract of insurance was made in San Francisco, Cal., on July 23, 1904, and was against "war risks" only; that the Arabia and her cargo were captured off the east coast of Japan on July 22, 1904, by a Russian vessel of war, and taken into a Russian port, where the cargo was condemned, under the authority of the Russian government, and confiscated as contraband of war; that thereafter, on August 10, 1904, the plaintiffs, acting for the owners of said cargo, abandoned it to defendant; that Jardine, Matheson & Co., were the owners of the flour at the time of effecting the insurance, and at the time of its seizure and condemnation.

The defendant, in its answer to each alleged cause of action, denied that the insurance was "on account of concerned" or on flour "lost or not lost," or that it ever made any insurance at all upon the flour referred to in the complaint, except such as is contained in a written contract, a copy of which was attached to the answer as an exhibit, and which will be hereinafter more particularly referred to; and, as affirmative defenses, the defendant alleged:

First. That, at the time of the execution of the contract referred to, the plaintiffs represented that the Arabia, with the flour on board, was then on the voyage from Portland to Kobe and Nagasaki; that this representation was false in fact; and that, when made, the Arabia and her cargo had been captured by a war vessel of Russia, and was no longer proceeding on said voyage.

Second. That when the contract of insurance was made there was a material concealment on the part of the plaintiffs, in that they had knowledge of a rumor current in Portland to the effect that the Arabia and her cargo had been captured, and failed to communicate this rumor to the defendant.

The action was tried by the court with a jury, and resulted in a verdict and judgment for the plaintiff for the amount sued for.

1. The plaintiffs upon the trial offered evidence which tended to show the following facts: On July 23, 1904, the plaintiffs made application to the defendant, at San Francisco, for insurance upon the cargo of flour carried by the Arabia upon the voyage referred to in the complaint; the insurance to cover the risks of capture, seizure, and detention in consequence of hostilities or warlike operations. The Arabia sailed on this voyage, 20 days before the application for insurance was made, and the defendant was informed of this fact, and of the further fact that plaintiffs were effecting the insurance for the owners of the cargo. The risk was accepted, the amount of the premium agreed upon, and the defendant, at the same time, delivered to plaintiffs the following memorandum, which is set out in the answer of defendant, and therein alleged to be the only contract entered into by the plaintiffs and defendant:

"No. 7522. $6100.

"St. Paul Fire & Marine Insurance Company, M. C. Harrison & Co., General Agents, San Francisco.

"San Francisco, July 23, 1904.

"This certifies that on the 23rd day of July, 1904, this company insured Balfour, Guthrie & Co., under policy No. 7522, the sum of sixty-one hundred dollars, on flour Kobe $4,350, Nagasaki, $1,750, valued at $———— shipped on board the S. S. Arabia, at and from Portland, to Kobe and Nagasaki. Loss, if any, payable to the order of Balfour, Guthrie & Co., on surrender of this certificate properly endorsed.

"In the event of any loss hereunder; it is requested that notice be given immediately to the general agents of this company.

"M. C. Harrison & Co., General Agents.

"War risks as per clause attached.

"This policy only to cover the risk of capture, seizure, and detention, and the consequence thereof, or any attempt thereat, piracy excepted, and also from the consequence of hostilities or warlike operations whether before or after declaration of war."

The clause relating to war risks was upon a slip or "rider" attached to the certificate.

This was the only writing delivered by defendant to plaintiffs as evidence of the contract made between them, and plaintiffs did not at that time have a policy of insurance in the defendant company, numbered 7,522, or any policy in that company.

There was also evidence tending to show that Jardine, Matheson & Co., were the owners of the flour insured, and it was not disputed that the Arabia with her cargo was captured by a Russian war vessel on July 22, 1904, and condemned as contraband of war by the Russian government.

In view of the issues made by the pleadings, it was incumbent upon the plaintiffs to prove the contract of insurance, alleged in the complaint; that is, that the contract was "on account of concerned," and upon flour "lost or not lost," on the voyage described in the complaint; and for the purpose of proving these facts the court, in addition to the matters above stated, permitted the plaintiffs to introduce evidence to the effect that at the date of the certificate, above set out, it was the custom of insurance companies in the city of San Francisco to

issue such certificates as a matter of convenience, and that certificates in that form were understood by those engaged in the business of insurance to be based upon a policy, in the usual form of policies of the company issuing the certificate, and on file in the office of the company, or in the hands of the person to whom the certificate was given; or, in the language of one of the witnesses, "every certificate of that character refers to a policy either on file in the office or in the hands of the insured."

Evidence was also introduced by the plaintiffs which tended to show that the form of the policy of insurance on cargo, which was in general use by the defendant in San Francisco on July 23, 1907, contained stipulations insuring not only the person applying for the policy, but "every other person and persons to whom the subject-matter of this policy does make or shall appertain in part or in all," and  " *   *   * that such insurance shall be and is an insurance (lost or not lost) at and from" designated ports.

The defendant objected to the admission of this evidence on the general ground that it tended to contradict and add to the terms of the contract contained in the certificate above set out, and the action of the court in admitting it is assigned as error.

It is certainly a settled rule of evidence that when a writing is apparently complete on its face, when it specifies the contractual obligations of both parties, and does not appear to leave any terms unprovided for, it cannot be added to or contradicted by parol evidence. Harrison v. McCormick, 89 Cal. 327, 26 Pac. 830, 23 Am. St. Rep. 469; Thomas v. Scutt, 127 N. Y. 137, 27 N. E. 961; Naumberg v. Young, 44 N. J. Law, 331, 43 Am. Rep. 380.

In Harrison v. McCormick, 89 Cal. 327, 26 Pac. 830, 23 Am. St. Rep. 469, it is said:

"The question whether a writing is upon its face a completed expression of the agreement of the parties is one of law for the court, and the rule which governs the court in its determination has been well settled as follows: 'If it imports on its face to be a complete expression of the whole agreement— that is, contains such language as imports a complete legal obligation—it is to be presumed that the parties have introduced into it every material item and term; and parol evidence cannot be admitted to add another term to the agreement, although the writing contains nothing on the particular one to which the parol evidence is directed.' "

The rule implies, and the courts hold, that parol evidence is not to be excluded when the writing evidently does not express the whole agreement. Thus in Naumberg v. Young, 44 N. J. Law, 338, 43 Am. Rep. 385, the court said:

"Undoubtedly this rule of evidence presupposes that the parties intended to have the terms of their agreement embraced in the written contract. If it was designed that the written contract should contain only a portion of the terms mutually agreed upon, and that the rest should remain in parol, the parties have not put themselves under the protection of the rule."

An inspection of the certificate relied upon by the defendant in this case plainly shows that it falls within the class of writings which may be supplemented by parol evidence, not inconsistent with its terms, for the purpose of showing the entire agreement between the parties. It

is a written memorandum containing an admission upon the part of the defendant that it had entered into a contract of insurance with the plaintiffs for the purpose of insuring the property therein described against war risks "under policy No. 7522."

The certificate upon its face refers to another writing for a more complete statement of the terms of the contract of insurance, and parol evidence is necessary to identify this writing. Redd v. Murry, 95 Cal. 48, 24 Pac. 841, 30 Pac. 132.

The words "under policy No. 7522" were evidently inserted with care, and cannot be rejected as surplusage; certainly the defendant, having delivered the certificate, is estopped from asserting that they are meaningless; and it having been shown, in accordance with the contention of the defendant, that it never, in fact, executed to plaintiffs a formal policy of insurance numbered 7,522, or any policy, it was proper to admit evidence showing that by the custom and usage of insurance companies such words inserted in a certificate like that under consideration here do not necessarily refer to an executed policy; that when the insured was not, at the time, the holder of a policy thus described, these words are understood by those engaged in the business of insurance to refer to a standard form of policy in use by the insurance company issuing the certificate, and retained in the office of the company. This evidence was proper for the purpose of removing what otherwise would be a latent ambiguity in the certificate, an ambiguity raised by the parol evidence showing that defendant never, in fact, executed any formal policy to plaintiffs. "A latent ambiguity arises when the writing upon its face appears clear and unambiguous, but there is some collateral matter which makes the meaning uncertain. And it is so well established as to be beyond all possible dispute that parol or other extrinsic evidence is always admissible to explain a latent ambiguity in any written instrument. The reason given for the rule is that, as the ambiguity is raised by extrinsic evidence, the same kind of evidence must be admitted to remove it." 17 Cyc. 676.

We fully agree with counsel for defendant that in those cases in which parol evidence is admitted, in connection with a writing, the parol evidence must be consistent with and not contradictory of the written instrument. Thomas v. Scutt, 127 N. Y. 137, 27 N. E. 961; The Alida, Abb. Adm. 173; Id., Fed. Cas. No. 200.

The evidence admitted upon the trial does not contravene that rule. The fact that in defendant's standard form of policy war risks are excluded, while in the memorandum clause attached to the certificate such risks are covered, does not raise a conflict between the certificate and the policy, because the certificate and policy are to be read together, as if the certificate, with its war risk clause, were actually attached to the policy, in which case the memorandum clause would be construed as a modification of the policy. Indeed, the form of policy admitted in evidence, itself, provides that "all clauses annexed hereto or stamped hereon, shall control other printed conditions inconsistent with the same."

**2.** Upon the question of concealment the court instructed the jury:

"A neglect to communicate that which a party to a contract of insurance knows and ought to communicate is called a concealment. A concealment, whether intentional or unintentional, entitles the injured party to rescind a contract of insurance."

"The applicant for insurance must disclose not merely facts of which he has actual knowledge, but such intelligence as he may have received from others, which, if communicated to the insurer, would tend to determine him either to decline the risk, or to ask a higher premium for accepting it; and this is the rule though the intelligence ultimately proves erroneous.

\*　\*　\*　\*　\*　\*　\*　\*　\*　\*　\*　\*

"Any fact is material to an underwriter which, if communicated to him, might induce him to refuse the insurance altogether, or not to effect it except at a higher premium.

\*　\*　\*　\*　\*　\*　\*　\*　\*　\*　\*　\*

"It is immaterial whether the omission to communicate a material fact arises from intention, indifference, or mistake, or from it not being present to the mind of the party who should communicate it that the fact was one which it was material to make known; the consequences will be the same; that is, the injured party thereby becomes entitled to rescind the contract."

And then in a subsequent part of the charge the court used this language:

"In whatever aspect the question of concealment may be presented, it is obviously, at last, no more than the simple question, have these underwriters been entrapped or imposed upon or seduced into a contract, of the force, extent, or incidents of which a competent understanding cannot be imputed to them?"

It is urged, in behalf of the defendant, that the giving of this last instruction was error; that it is in direct conflict with the previous instructions given by the court, and "most strongly conveyed the impression to the jury that a fraud in fact must be contemplated by the assured."

We do not think that, when read in connection with other parts of the charge, this instruction will bear the construction placed upon it by the defendant. It is directed entirely to the effect of the alleged concealment upon the mind of the insurer, and the jury were told, in effect, to consider whether by reason of such concealment the defendant was led or caused to make the contract sued on; that is, led to make a contract which it would not have made if there had been no concealment by plaintiffs. The instruction is a restatement in somewhat ambiguous language of that which had been before clearly stated to the jury; and it seems very clear to us that the jury could not have understood from it that they must find that plaintiff was guilty of actual fraud in effecting the insurance in order to justify them in returning a verdict for the defendant, in the face of the statement of the court made more than once in other parts of the charge:

"That a concealment, whether intentional or unintentional, entitles the injured party to rescind the contract of insurance," and that "it is immaterial whether the omission to communicate a material fact arises from intention, indifference, or mistake, or from it not being present to the mind of the party who should communicate it that the fact was one which it was material to make known."

3. There are other assignments of error, all of which we have fully considered, but do not deem necessary to discuss. We find no error in the record.

Judgment affirmed.