## UNIVERSITY CITY, MO., v. HOME FIRE & MARINE INS. CO.

### SAME v. WESTERN FIRE INS. CO.
#### Nos. 11691, 11692.

Circuit Court of Appeals, Eighth Circuit.

Aug. 23, 1940.

As Modified on Denial of Rehearing

Sept. 21, 1940.

Marvin E. Boisseau, of St. Louis, Mo. (John W. Calhoun, of St. Louis, Mo., on the brief), for appellant.

Web A. Welker, of St. Louis, Mo. (Joseph H. Grand, James C. Jones, Jr., and Jones, Hocker, Gladney & Grand, all of St. Louis, Mo., on the brief), for appellees.

Before WOODROUGH and THOMAS, Circuit Judges, and BELL, District Judge.

THOMAS, Circuit Judge.

The plaintiff appeals from judgments for defendants entered in two suits upon fire insurance policies issued by the defendant companies. The issues were the same in both cases. By stipulation of the parties approved by the court it was agreed that the result in the suit against the Home Fire Insurance Company should abide the verdict in the trial of the case against The Western Fire Insurance Company. By a further stipulation both cases are presented here upon the same record. Accordingly, both appeals may properly be disposed of in one opinion.

The plaintiff's petition alleges that it is a municipal corporation organized under the laws of the state of Missouri; that on October 25, 1935, the defendant The Western Fire Insurance Company issued to plaintiff its policy of insurance whereby it agreed to insure plaintiff for a term of three years against all direct loss or damage by fire to a fireproof building owned by plaintiff, located on the north side of Delmar Boulevard, between Trinity Avenue on the west, and Oberlin (now known as Harvard) Avenue on the east, to an amount not exceeding $7,500; that on April 29, 1938, while the policy was in full force and effect, a fire occurred in the building insured by and described in the policy; that the building was damaged in an amount greatly in excess of the face of the policy; and that notwithstanding plaintiff's compliance with all the terms of the policy, the defendant has failed and refused to pay the amount of the policy and has denied that it is indebted to plaintiff in any amount whatsoever. A copy of the policy was attached to and made a part of the petition. The prayer is for judgment for the face amount of the policy, damages for vexatious refusal to pay, and for a reasonable attorney's fee.

The defendant's answer admits that it issued a fire insurance policy on "a fireproof building owned by plaintiff"; admits that Exhibit A, filed with plaintiff's petition, is a true and correct copy of the policy; admits that plaintiff notified it of a fire in a building owned by plaintiff; and admits that it has refused to pay plaintiff the amount of the policy. The defendant denies specifically that its policy insured plaintiff against all direct loss by fire to a fireproof building owned by plaintiff, located on the north side of Delmar Boulevard between Trinity Avenue on the west and Oberlin (now known as Harvard) Avenue on the east; denies that a fire occurred in the building insured by defendant; and denies that its refusal to pay is vexatious.

Pleading further the defendant alleges "That on or about the 29th day of April, 1938, a fire occurred in a building owned by plaintiff and situated on the west side of Oberlin Avenue, in the rear of the property mentioned and described in the policy of insurance issued by defendant to plaintiff and that said building was not covered by the aforementioned policy of insurance, and that defendant is not liable to plaintiff for and on account of any fire loss sustained by plaintiff on account of said fire in said building."

The policy attached to the petition provides for insurance

"On the fireproof building, located north side of Delmar Blvd. between Trinity & Oberlin Ave., known as 6801 Delmar Blvd., University City, Mo.

"This policy covers said building, including its attached platforms, including foundations, plumbing, electrical wiring and stationary heating, lighting, refrigerating and ventilating apparatus and fixtures, attached signs; stacks and awnings (covered under fire policies only), door and window screens, storm doors and windows; also all permanent fixtures, stationary scales, elevators and machinery therefor, all contained therein or thereon, and all while belonging to and constituting a part of said building."

The single issue raised by the pleadings is whether the fire occurred in the building

described in the policy. The facts relative to the physical characteristics and use of the property owned by the plaintiff were introduced in evidence by both parties and are not in dispute in any particular. They are as follows:

The plaintiff municipality owns a block of land containing about four acres lying north of Delmar Boulevard and west of Oberlin, now called Harvard, Avenue, in University City, Missouri. It is bounded on the west and north by Trinity Avenue, which runs in a curve, giving the block the shape of a half moon, or the segment of a circle.

The somewhat peculiar design of the structure on this block gives rise to the dispute between the parties. It was constructed as one unit in 1903 by a publishing concern. The south portion, or that part standing directly adjacent to Delmar Boulevard, is octagonal in shape and rises five stories above the basement. The north portion is rectangular in shape, about 100 feet wide by 250 feet long. It is three stories high at its southern end, and drops to two stories and then to one story at its northern end. These two parts of the structure are connected by a corridor about 12 feet wide and 50 feet long. A pipe tunnel from the boiler room at the extreme north end of the rectangular portion of the structure runs under the rectangular part and the corridor portion and opens into the basement under the octagonal portion. The latter section is on higher ground than the connecting corridor and rectangular section. The first floor of the corridor connects the basement of the octagonal portion with the first floor of the rectangular portion of the structure. An open walk-way overhead the corridor permits access between the first floor of the octagonal portion and the second floor of the rectangular part.

The entire structure is fireproof. It was erected at one time upon one continuous foundation. The outside walls are brick and ornamented terra cotta, are integral and present the same architectural design or barricade treatment throughout the entire unit. All parts of the structure receive heat from a stationary heating plant located in the one-story section at the north end of the rectangular portion. The stack or chimney rises above the boiler room at that end of the structure. At one time it also housed the dynamos used in operating the elevators in the building.

The whole structure has always been known as 6801 Delmar Boulevard, and mail has always been addressed to all the occupants at that number.

The whole property was originally used by the publishing concern. The south portion was used for offices and editorial rooms and the north portion for machinery and the mechanical requirements of the printing business. When built, the only public entrances to the building opened into the octagonal section, one off the corner of Delmar and Harvard (Oberlin) and one off the corner of Delmar and Trinity. An employees' entrance opened off Harvard (Oberlin) Avenue into the pressroom and a driveway at the extreme north end was used by vehicles hauling paper and coal to the building.

The plaintiff purchased the premises in 1930 and made certain alterations in it to adapt it to the uses of the city. The first four floors of the octagonal section are used for offices by certain departments of the city government. The fifth floor is leased to a tenant. The city health and sanitary, police and fire departments are housed in the south end of the rectangular section adjacent to the octagonal section. The north end of the rectangular section is leased to and occupied by the Orcutt Storage Company. A platform for the use of the Orcutt Company has been added to this section from which a walk runs to Harvard (Oberlin) Avenue. The city has also constructed a double garage between the two sections of the structure which is connected to the Arcade passageway on the east side. Cement driveways have been constructed from Harvard Avenue to the garage and to the part occupied by the police and fire departments.

The fire resulting in the loss for which recovery is sought occurred on or about April 29, 1938, in that part of the rectangular portion occupied by the Orcutt Company. The defendants denied liability on the ground that their policies covered only the octagonal portion of the structure.

In seeking a reversal of the judgments entered upon the verdict of the jury the plaintiff relies mainly upon two contentions: (1) that the court erred in admitting in evidence certain exhibits, and (2) that he erred in refusing to instruct a verdict in plaintiff's favor. Other minor matters are argued in the briefs, but they are all resolved by a determination of these two leading contentions.

■ 1. Admission of exhibits. In order to bring into relief the questions arising in reference to the admission of exhibits, it is necessary to advert to the proceedings at the trial. The plaintiff attempted to show by the testimony of one Gantner, the insurance agent who procured the policies for the city, that he had been directed by the city council to obtain insurance on the structures as a unit and that he had so instructed the insurance brokerage firm with which he dealt and which issued the policies. His testimony was properly excluded on defendant's objection. Thereupon, the plaintiff having rested, the defendant offered in evidence exhibits 9, 10, 11, 12, 13, and 15, the nature of which will be explained later, and they were upon objection of counsel for plaintiff rejected. Both parties then rested, and because of illness of counsel the further trial of the case was adjourned for two days.

When the trial was resumed, upon application of counsel for defendant, the case was reopened, and the defendant renewed its offer of the above-numbered exhibits. They were objected to by counsel for plaintiff on the ground that "they purport to be policies of insurance in different companies than those the case is for; second, that they are expired before these policies were taken out, they are absolutely irrelevant and immaterial."

Thereupon the court, addressing counsel for the defendant, said: "Well, in connection with that, are you willing to withdraw your objection to plaintiff's testimony that was excluded on your objection, to the effect that you were requested to insure a group of buildings, the group of buildings of University City? If you are willing to withdraw your objection to that, I will overrule the objection to the introduction of these exhibits." To which counsel for defendant replied: "Yes, I will withdraw my objection." When it appeared that the plaintiff's witness Gantner was not present, counsel for defendant announced that he would concede that "he (the absent witness) will testify as to whatever they will state he will testify to."

Upon further objection to the offer of the exhibits by counsel for plaintiff on the additional grounds that the old policies were with the mortgagee and there was no showing that the city officials had ever seen them; that they were written by a different agency; and that it was not shown that the descriptions in the policies were ever brought to the attention of the city officials, the court said: "I think it is competent, in view of the evidence that the plaintiff has offered. It has offered evidence tending to show that the officers of the City always regarded the building as [at] 6801 as including the entire group of buildings, and the fact, if it is a fact, that theretofore the City had insured those buildings as separate buildings is, in some way, a response and in reply to the position taken by the plaintiff, and so, in view of the fact that the defendant has withdrawn its objection to certain evidence tendered by the plaintiff, we think that these two exhibits (12 and 13) are competent, and we overrule plaintiff's objection to them."

Exhibits 9, 10 and 11, are memoranda of expired policies of insurance taken from the files of an insurance broker, and, in so far as here material, are identical. They purport to insure separately and in different amounts, "the five story, fireproof building located on the No. Side of Delmar, bet. Harvard & Trinity, Block 4, Sub-div. 1, known & numbered as 6801 Delmar, University City, Missouri", and "the one, two and three story, fireproof buildings on rear of above described premises, together with fireproof tunnel or passage, connecting with front building." Exhibits 12 and 13 are memoranda from the files of the F. D. Hirschberg Company, another insurance agency. Exhibit 12 refers to a policy which purported to insure "the fireproof constructed building, situated North side of Delmar Avenue, between Oberlin and Trinity Avenues." Exhibit 13 refers to another policy purporting to insure "the fireproof constructed building, situated West side of Oberlin Avenue, in rear of City Hall Building". All of the policies referred to in these exhibits were issued in 1932 by companies not parties to this suit, and they expired in 1935. Exhibit 15 is a copy of a letter written in 1932 by the F. D. Hirschberg Agency to the mortgagee of the property owned by plaintiff informing the mortgagee of the expiration in 1932 of certain policies of insurance written by companies not parties to this suit. The policies are not in this record but are referred to in the letter as being "on the building, west side of Harvard in rear of Magazine Building" and "on the building, north side of Delmar Boulevard, between Harvard and Trinity Avenues."

■ These exhibits could have been admissible only for one or both of the fol-

lowing reasons: (1) for the reason that they were relevant to the issue and would aid the court in construing the language of the policies, or (2) because the policies in suit are ambiguous as a matter of law making the exhibits competent as evidence of the intent of the parties.

██ It will be noted that no evidence was admitted to show whether the officers of the city regarded the structure as comprising one or more buildings; and expert testimony offered by the plaintiff to show that the structure constituted but one building was upon objection of counsel for defendant rejected. Obviously how the city officers regarded the building was entirely irrelevant to the question of the meaning of the written contract. Testimony to the effect that the entire unit had always been known as 6801 Delmar Boulevard and by no other number, and that mail had always been directed to all the occupants of the premises at that address, is a different matter.

It will be noted further that the policies in suit are not renewal policies. The defendant companies had no connection with the former insurance on the property. The policies were issued by different companies and through different agencies. So far as it appears in the record the defendants had no knowledge of the expired policies, and neither the defendants nor their agents had seen the old policies nor the exhibits at the time the policies sued on were issued. There is no evidence to support an inference that the defendants at the time the policies in suit were issued in any way relied upon any information disclosed by these exhibits; and there is no similarity between the description in the policies in suit and the descriptions in the exhibits to support the contention that the defendants understood that they were replacing insurance upon only one section of the structure, or that the policies were issued to replace other insurance at all.

██ Without a showing that the exhibits bear some relation to the contracts in suit they were clearly inadmissible. Generally, the rule is as follows: "Evidence of other agreements than the one involved in the particular issue is as a general rule inadmissible, unless the contract in suit was made with reference thereto, or forms a part thereof, or unless it forms a relevant part of the circumstances leading up to and surrounding such contract, or has been referred to to fix the terms of the contract in suit, or tends to show the presence or absence of a consideration, or that the contract in issue was not made. Neither is evidence of a similar contract previously made admissible to prove the terms of the contract in suit; and evidence of subsequent contracts with other parties is irrelevant. So, where the contract in question supersedes another, the original contract is properly excluded. * * * evidence as to the usual terms of contracts such as the one in issue is inadmissible in the absence of any showing that the parties contracted with reference to such terms. * * * Transactions with a third person are not admissible to prove the terms of a contract." 17 C.J.S., Contracts, §§ 592, 593, pages 1237, 1239; see, also, 13 C.J. 528.

None of the circumstances noted above have been shown to justify the admission of the expired policies and we have been unable to find any authority tending to uphold it. None is cited in defendants' brief. Such authority as we have been able to find holds to the contrary. Corporation of Roman Catholic Church v. Royal Ins. Co., 158 La. 601, 104 So. 383; Still v. Connecticut Fire Ins. Co., 185 Mo.App. 550, 172 S.W. 625, 627; Arlington Mfg. Co. v. Norwich Union Fire Ins. Co., 2 Cir., 107 F. 662, 665; Westinghouse Electric Co. v. Western Assur. Co. of Toronto, 42 La.Ann. 28, 7 So. 73, 74.

In Corporation of Roman Catholic Church v. Royal Ins. Co., supra, the court said [158 La. 601, 104 So. 384]: "The use of the words 'day school' in the policy, and the fact that one of plaintiff's buildings was used exclusively for a day school, is the ground upon which defendant's contention rests as to the identity of the particular building insured. Defendant offered certain expired policies of insurance to show that, prior to the issuance of the policy sued upon, plaintiff had insured the day school but had not insured the convent. The offerings were excluded by the trial judge, and we think his ruling was correct. Each policy is an independent contract. What particular property may have been covered by an expired policy is not proof of the intention of the parties in the confection of a new policy, and it can be of no avail in interpreting the provisions of a subsequently issued and differently written contract."

██ Clearly, these exhibits were not relevant and should not have been admitted to aid the court in construing the policies.

The defendants contend, however, that the error, if such, in admitting the exhibits was harmless. Rule 61 of the Rules of Civil Procedure for District Courts, 28 U.S.C.A. following section 723c, provides: "No error in either the admission or the exclusion of evidence * * * is ground for granting a new trial or for setting aside a verdict or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice." This rule is intended for the guidance of the district court, but it should be heeded by the appellate court to make it effective.

Section 391, Title 28 U.S.C.A., Judicial Code § 269, provides that "On the hearing of any appeal * * * in any case, civil or criminal, the court shall give judgment after an examination of the entire record before the court, without regard to technical errors, defects, or exceptions which do not affect the substantial rights of the parties." This section of the statute was included in the Act of February 26, 1919, 40 Stat. 1181. Speaking of the purpose of the statute, the Supreme Court said in Bruno v. United States, 308 U.S. 287, 294, 60 S.Ct. 198, 200, 84 L.Ed. 257, that "that Act was intended to prevent matters concerned with the mere etiquette of trials and with the formalities and minutiae of procedure from touching the merits of a verdict." Neither this statute nor Rule 61, supra, were intended to deprive a litigant of a substantial right in the trial of a case, civil or criminal. Whether or not a substantial right is invaded by the admission of irrelevant and incompetent evidence must depend upon the circumstances of each case. In this instance it so happened that the incompetent evidence was given great prominence upon the trial. It was given an emphasis before the jury altogether out of proportion to its merits. It was excluded when it was first offered and nearly two days later the case was reopened and its admission reconsidered. As the trial worked out the evidence was highly prejudicial.

It will be better economy of space in drafting this opinion to discuss the admissibility of the exhibits on the alleged ground that the description of the insured property in the policies is ambiguous in connection with the discussion of the ruling on the plaintiff's motion for an instructed verdict.

2. The motion to instruct a verdict for plaintiff. The plaintiff excepted to the refusal of the court to instruct a verdict in its favor on the ground that the language of the policy is capable of being so construed as to cover the property damaged by fire. The court submitted the case to the jury, instructing them that "If the language of the policy in question relating to the property which it attempts to insure is of an ambiguous or doubtful meaning, then the law requires such doubts, if any, to be resolved against the defendant, and further requires the policy in such event to be construed in favor of the plaintiff * * * and if * * * you find * * * that there is an ambiguity as to the property to which the policy applied, and if you find further that the policy is reasonably capable of being construed as describing the property damaged by the fire, then you must find in favor of the plaintiff on such issue, and this is true even though you may further find * * * that the defendant did not intend to insure such portion of plaintiff's property."

The plaintiff does not criticize the rule of law stated in the instruction. Its contentions are (a) that the construction of the policy was a question of law for the court and that the court erred in submitting the question of ambiguity to the jury and (b) that the policy is as a matter of law reasonably capable of being construed to cover the damaged property and that the court should have so held.

The law and the policy must be examined to determine the validity of these contentions. It is obvious that either the policy does adequately describe the entire structure including the portion damaged by fire or that the description of the insured property is ambiguous. Ambiguities in written instruments are of two kinds. They are either patent or latent. A patent ambiguity is one arising upon the face of the instrument without reference to the described object while a latent ambiguity is one developed by extrinsic evidence, where the particular words, in themselves clear, apply equally well to two different objects. Wolff Truck Frame Co. v. American Steel Foundries, 7 Cir., 195 F. 940, 944; Graham v. National Surety Co., 8 Cir., 244 F. 914; St. Paul Fire & Marine Ins. Co. v. Balfour, 9 Cir., 168 F. 212, 216. A latent ambiguity may be one in which the description of the property is clear upon the

face of the instrument, but it turns out that there is more than one estate to which the description applies; or it may be one where the property is imperfectly or in some respects erroneously described, so as not to refer with precision to any particular object. Patch v. White, 117 U.S. 210, 217, 6 S.Ct. 617, 29 L.Ed. 860; Queen Ins. Co. of America v. Meyer Milling Co., 8 Cir., 43 F.2d 885. If such an ambiguity develops, extrinsic evidence is admissible to show the real intent of the parties. Queen Ins. Co. of America v. Meyer Milling Co., supra.

Unless the extrinsic facts upon which the existence of a latent ambiguity is dependent are in dispute, the question of whether a contract is ambiguous is a matter of law for the court. Where the facts are not in dispute the application of the description of the property to the subject matter of the contract is the duty of the court. Hurin v. Electric Vacuum Cleaner Co., 6 Cir., 298 F. 76; East & West Ins. Co. of New Haven, Conn. v. Fidel, 10 Cir., 49 F.2d 35, 38; Cameron Mill & Elevator Co. v. Chas. F. Orthwein's Sons, 5 Cir., 120 F. 463; Arlington Mfg. Co. v. Norwich Union Fire Ins. Co., 2 Cir., 107 F. 662; Wright v. Ætna Life Ins. Co., 3 Cir., 10 F.2d 281, 46 A.L.R. 225; Gersten v. Western Assur. Co., 265 Mich. 122, 251 N.W. 310; Peony Park v. Security Ins. Co. of New Haven, Conn., Neb., 289 N.W. 848; see, also, Keyes Farm & Dairy Co. v. Prindle, 249 Mo. 600, 155 S.W. 391, 393; Cowell v. Employers' Indemnity Corp., 326 Mo. 1103, 34 S.W.2d 705; Ross v. St. Louis Dairy Co., 339 Mo. 982, 98 S.W.2d 717; Roach-Manigan Paving Co. v. Southwestern Surety Ins. Co., Mo.Sup., 238 S.W. 119; State ex rel. v. Allen, 305 Mo. 607, 267 S.W. 379. The court must determine whether the language of the contract aptly reads upon its subject matter or whether it is latently ambiguous. This question must first be determined by the court in order to determine the necessity for parole evidence of intent and the submission of the disputed issues of fact to the jury. Queen Ins. Co. of America v. Meyer Milling Co., supra. In determining the issue of ambiguity the court was entitled to consider only the terms of the policy in relation to the undisputed facts relative to the physical characteristics of the property which it was contended was within its scope. It was the court's problem to read the description in the policy, ignoring none of its terms, upon the subject matter of the insurance and to determine whether, when so read, the description with reasonable aptness designated the structure as a whole or whether, when so construed, it was doubtful whether the damaged property was included. In considering this problem the court was required to give the terms of the description their usual and ordinary meaning and to consider the undisputed physical facts relating to the design, construction and location of the property. Ries v. Dodson, 3 Cir., 46 F.2d 68; Hurin v. Electric Vacuum Cleaner Co., supra; F. W. Woolworth Co. v. Petersen, 10 Cir., 78 F.2d 47; Corbett v. Winston Elkhorn Coal Co., 6 Cir., 296 F. 577. When this is done, we do not think a latent ambiguity can be said to exist as a matter of law.

The description in the policy clearly reads upon the improvement as a unit when the language is given its usual and ordinary meaning. A "building" is defined as "a fabric or edifice, framed or constructed, designed to stand more or less permanently and covering a space of land for use as a dwelling, storehouse, a factory, shelter", etc. Webster's New International Dictionary; Great Eastern Casualty Co. v. Blackwelder, 21 Ga.App. 586, 94 S.E. 843. The term is not confined to structures of any particular size or shape. When it becomes material to determine whether or not one or more than one building is involved the question must depend, in so far as matters of interpretation are concerned, upon the physical characteristics of the structure. Here the evidence is undisputed that it was erected at one time, upon one continuous foundation, designed to present an identical style of architecture throughout, and that the whole improvement is fireproof and connected as an integral unit. It was treated as a unit in respect to servicing it with heat, light and water. So far as matters of use are concerned, practically the entire building was devoted to the purposes of the city government and used as a unit. The fact that the city did not require the use of the entire structure and leased a part of one section to the Orcutt Company can have no particular bearing under the issues in this case. The entire property was known as 6801 Delmar Boulevard. The description in the policy, therefore, aptly reads upon the property as a whole. When so read every word in the description is given coherence and force.

On the other hand, if we attempt to apply the description to the octagonal part only, we are at once met by inconsistencies. The statement that "This policy covers said building, including its attached platforms, * * * plumbing * * * stationary heating, * * * stacks * * * elevators and machinery therefor * * * all while belonging to and constituting a part of said building" has in no reasonable sense any application to the octagonal section considered as a separate building. The stationary heating plant, the stack, and the only platform connected to the structure are all a part of the rectangular section. The electric generators, once used to operate the elevators, are located in the rectangular part and are now used to operate a search light at the top of the octagonal section. The plumbing or water pipes come into the stucture at the boiler room on the north end and extend to the various portions of the structure through the service tunnel underlying it. Upon the hypothesis that there are two buildings the language of the policy obviously applies to the rectangular "building" only. Further, the entire property and not solely the rectangular portion thereof is known as 6801 Delmar Boulevard. Thus it is only when the structure is considered as an architectural whole, and not as two separate buildings, that all the language of the policy has meaning and can be given effect; and when so considered the description is apt and clear.

In these circumstances it cannot be said that a latent ambiguity may be inferred from a consideration of the subject matter of the policy. The description contained therein does not apply equally well to two different objects. Further, an insurance company should not be permitted to claim ambiguity solely because of an irregularity of design or contour upon undisputed facts showing an integral structure described in the policy as a "building". The general rule is that an insurance contract on a "building" covers all the inseparable and constituent parts thereof. East & West Ins. Co. of New Haven, Conn. v. Fidel, 10 Cir., 49 F.2d 35, 39; Pettit v. State Ins. Co., 41 Minn. 299, 43 N.W. 378; Gross v. Milwaukee Mechanics Ins. Co., 92 Wis. 656, 66 N.W. 712; Still v. Connecticut Fire Ins. Co., 185 Mo.App. 550, 172 S.W. 625; Prussian Nat. Ins. Co. v. Terrell, 142 Ky. 732, 135 S.W. 416; General Accident, Fire & Life Assur. Corporation v. Cohen, 73 Colo. 459, 216 P. 522; Boak Fish Co. v. Manchester Fire Assur. Co., 84 Minn. 419, 87 N.W. 932; Nelson v. Traders' Ins. Co., 86 App.Div. 66, 83 N.Y.S. 220, affirmed in 181 N.Y. 472, 74 N.E. 421.

In Pettit v. State Ins. Co., supra [41 Minn. 299, 43 N.W. 379], the policy read "Four thousand dollars on the following specified and located property, namely, grain * * * while contained in the frame, iron-clad, metal-roof [elevator] building occupied for the storage and handling of grain, and known as the 'St. Anthony Elevator', situated in Auditor's Subdivision No. 21, Minneapolis, E. D., Minnesota." The facts disclosed that the property consisted of an engine house, elevator adjoining containing all the elevator machinery and having storage bins of a capacity of 500,000 bushels, and an addition or extension 300 feet distant known as "Annex A", with a capacity of 1,-000,000 bushels. The main building and the Annex were connected by passageways. The separate portions of the structure were identical in construction and the entire property was known as "The St. Anthony Elevator" located on Auditor's Subdivision No. 21, Minneapolis, Minnesota. A fire having destroyed the main elevator and the Annex, the defendant insurance company contended that its risk was limited to the main elevator building. The court held that the Annex was included within the description of the policy, considering its language as descriptive of the character, construction, purpose and use of the building insured.

In Still v. Connecticut Fire Insurance Co., supra [185 Mo.App. 550, 172 S.W. 626], a persuasive authority in view of the fact that a Missouri contract is involved in the instant case, the court construed a policy insuring "the shingle-roof frame barn building situate on the same premises" as the insured's residence. A windstorm did little damage to the roof of the barn but blew down a silo attached to it. The defendant insurance company contended that the silo was a separate structure and did not constitute a part of the "barn building". The plaintiff insisted that the whole was one building, and the court so held. In commenting on the fact that the silo was built a year after the barn was erected, the court stated: "But this difference in time of erection would make no difference if the two were

so erected and joined together in such a way as to constitute in fact one building. Whether or not a structure added to a building is to be considered a part of the whole building depends upon a number of things. It would seem that if the addition was erected in such close proximity to the other structure as to be physically joined thereto, and is so arranged that the addition can only be used in connection with the main structure, and that the two are devoted to one general common purpose and are occupied and used by one owner, then they could be treated as one structure or building." After noting the uses to which the barn and silo were put the court said: "Where the subject of the insurance is described as a 'building' the entire structure, though composed of several parts is included if the parts are so joined as to be used as one and devoted to the same common purpose."

It is evident that the rule stated above may lead to a more extended coverage than if matters relative only to the physical construction of the property are considered. In Gross et al. v. Milwaukee Mechanics Ins. Co., 92 Wis. 656, 66 N.W. 712, 713, the property, at the time the policy was issued, consisted of a one-story frame store building and a shed or lean-to so attached as to constitute one building. Thereafter the lean-to was moved back 20 feet and an addition was constructed on the main building extending to within three feet of the shed, to which it was connected by a platform. Doors between the two parts permitted the whole to be used in the grocery business as before. The defendant insurance company denied liability for a loss due to a fire in the shed, contending that its policy was limited to the store building. The Wisconsin Supreme Court, considering the use to which the property was put, held that the shed was within the terms of the policy insuring property "while contained in the one-story frame store building situated on the south side of Cranberry street in Centralia."

We do not understand the Missouri Court of Appeals, and other courts which have considered the use to which the property was put, to hold, however, that of necessity the separate parts of a structure must be used and devoted to the same common purpose in order to be considered one unit. In some circumstances use is among others a relevant and proper test to determine whether or not a structure is integral. But if the various portions of a structure are so physically connected in construction as to form one integral unit, the use to which the separate parts are put is necessarily immaterial. Fortesque v. Carroll, 76 N.J. Eq. 583, 75 A. 923, Ann.Cas.1912A, 79; Nelson v. Trader's Ins. Co., supra; Prussian Nat. Ins. Co. v. Terrell, supra; Robinson v. Pennsylvania Ins. Co., 87 Me. 399, 32 A. 996. Normally, the word "building" connotes matters of construction rather than matters relating to the use or mode of occupancy. Fortesque v. Carroll, supra. We think that the facts in the instant case show that the word is used in the policy in that sense. But if use is to be considered it may be noted that a large part of the entire structure is devoted to the use of the city government.

The reason for the rule that insurance on a "building" must be held to cover all the constituent parts thereof is aptly expressed in Prussian Nat. Ins. Co. v. Terrell, supra [142 Ky. 732, 135 S.W. 419], as follows: "It must be borne in mind that a description in a policy of the building insured is never accompanied, or intended to be accompanied, by the particularity of an architect's plans and specifications. The purpose of the description is simply to identify in a general way the building insured. Because the description fails specifically to include any particular portion of the building is no reason why that portion should be excluded from the operation of the policy. Any other rule would lead to endless confusion and all sorts of frivolous pleas and contentions. The courts would be called upon to say whether or not a bay window, a back porch, or a bathroom was included in the policy which simply described in a general way the building of which they were a part at the time the insurance was obtained. The result would be that, unless a man took the care to describe with particularity each and every portion of the building insured, he would never know what his rights were under his policy; while an insurance company would always have some plausible pretext upon which to resist payment of the policy."

After a careful study of the record we are of opinion that the court erred in admitting in evidence Exhibits 9, 10, 11, 12, 13 and 15; that the question of the construction of the policy was in the first instance a question of law for the court; and that in view of the undisputed facts

the policy is reasonably capable of being construed as describing the property damaged by the fire as a matter of law. The motion for an instructed verdict for the plaintiff should have been sustained. The result is that the judgments must be reversed. There remains as a result also, for determination by the district court, the issue with reference to attorney fees and alleged damages for vexatious delay.

The judgments appealed from are accordingly reversed, with instructions to grant a new trial in accordance with the law as announced herein.

WOODROUGH, Circuit Judge (dissenting).

City of University City is the owner of a plot of ground in the City known as Block 4, University Heights Subdivision, with the improvements thereon, consisting of an octagonal shaped five-story building connected at its rear or north side through a fifty-foot long passageway with a rectangular building which is three, two and one story in height in its several parts. There is also a one-story police garage on the lot. The octagonal building is on the north side of Delmar Avenue and has two main entrances on Delmar Avenue and is occupied as a City Hall with some office space rented to tenants. The other buildings open onto the west side of Harvard Avenue (formerly Oberlin Avenue) and are occupied by the City Police Department and jail, a partitioned-off space rented to a public warehouse company, and a police garage. A fire occurred in a part of the rectangular building which was rented by the City to Orcutt Moving and Storage Company for warehouse purposes, and the City brought this suit to recover on account of the loss upon a fire insurance policy issued to it by the defendant Western Fire Insurance Company. The company admitted that it had issued the policy sued on and that it was in force at the time of the fire, but asserted that it insured the octagonal building, where there was no fire, and denied that it insured the rectangular building where the fire was. The words and figures of description used in the policy to identify the property on which the insurance is written are: "On the fireproof building, located North side of Delmar Blvd. between Trinity & Oberlin Ave., known as 6801 Delmar Blvd., University City, Mo."

The City claims that the octagonal building and the rectangular building constituted one integral structure or building, and that the part of the rectangular building that was burned was included within the description and identifying street number in the policy. The sole issue litigated below was whether both or only one of the improvements was described and insured by the policy. The court instructed the jury to take into consideration the language of the policy and the facts and circumstances in evidence, and if it appeared that the policy was capable of being construed by a person of ordinary prudence as applying to and covering the property where the fire occurred, their verdict should be for the plaintiff, even though it appeared from the evidence that the defendant did not intend to insure the portion of the property which was damaged by the fire. The jury's verdict was for the insurance company and the City has appealed from the judgment of dismissal entered on the verdict.

There is evidence in the record that this whole property of the City was subject to a mortgage owned by the Mercantile Commerce Bank and Trust Company, requiring that there should at all times be kept deposited with the bank $75,000 of insurance payable to the bank in case of loss, and in compliance with that requirement, the City's insurance policies were physically deposited in the hands of the bank and, including the policy in suit, they were payable in case of loss to the bank. The bank acquired the mortgage in 1932, and in January of that year there was $50,000 of tornado insurance on the improvements on the mortgaged property which was expiring. The bank notified the City in advance of the expiration and the City procured continuance of the protection by depositing with the bank three new policies, two for $15,000 and one for $20,000, to make up the $50,000 of insurance. In all of these policies the octagonal building was identified as the building on the north side of Delmar, numbered 6801 Delmar, the rectangular building was identified as the building "on the rear" of the building numbered 6801 Delmar, and the police garage was designated as the police garage. Another expiration date in the same year, 1932, was October 25, at which time $25,000 of fire insurance deposited with the bank would expire. On being notified by the bank, the City procured two new policies continuing fire insurance in the same amount, to be written and deposited with the bank by F. D. Hirschberg and Company, an old established insurance agency of St. Louis. Of these new policies, issued simultaneously, one was in the

amount of $15,000 and described the property insured as the building "situated North side of Delmar Avenue between Oberlin and Trinity Avenues, Block 4 Subdivision #1 University City", and the other policy, in the amount of $10,000, described the property insured as the building "situated West side of Oberlin Avenue in the rear of City Hall Building." Opposite the word "Occupancy" in the record of the first policy appeared "City Hall", and in the other policy record the notation as to occupancy was "Orcutt Whse" (Warehouse). Obviously the first description designated the octagonal building and the second designated the rectangular building to the rear where the fire occurred. The rate at which the octagonal building was insured was .866 per hundred dollars for three years, and the rate on the rectangular building was 2.783 per hundred dollars for the same period.

Up to the expiration date of these two policies on October 25, 1935, there was no possibility of uncertainty as to what improvements the respective policies deposited with the bank were intended to cover. The descriptions in the policies were not in conveyancers' language but were sufficient to inform the insured clearly that the improvements were insured as distinct and separate buildings, one building in the rear of the other building, and that each described structure was treated as a building to which certain insurance was related. Copy of a letter from the Hirschberg Agency to the bank is in evidence, listing and transmitting to the bank three policies "written for the account of the City of University City which expired on October 25" (1932). The letter is on one sheet and discloses at a glance that the building on the "north side of Delmar" was insured as one building in the amount of $15,000 and the building "in rear" was insured in the sum of $10,000 as a different building. Being a letter of transmittal of fire insurance policies that had expired long before the trial of this case, neither the old policies nor the original letter transmitting them were available at the trial, but there is no reason to question the record kept in the usual course of business in the Hirschberg Agency. It appears that as the policies were physically deposited with the bank their verbiage was unknown to the City officers. They testified at the trial that they had never seen any of them. A lady in the employ of the City who may have had more information was very sick and unable to testify.

October 25, 1935, was the expiration date of the two fire policies which had been written by Hirschberg and Company, and transmitted to the bank in 1932, one on the octagonal building for $15,000 and one on the building "in rear" for $10,000 and the bank duly notified the City concerning the expirations and requested deposit of renewal policies. The letter of the bank was not in evidence, but the City Board of Aldermen duly passed a resolution reciting that it was informed of the expiration of the two policies, and the Board directed that the "ten thousand dollar fire insurance policy" "be given to Frank L. Mackey", and "the fifteen thousand dollar fire insurance policy to Walter Gantner," and that "the above fire insurance policies * * * be allotted" as stated.

Frank L. Mackey and Walter Gantner were insurance solicitors or brokers, and the plain meaning of the Board's order was that one of the brokers should procure continuation of the insurance represented by the expiring $15,000 policy on the octagonal building, and the other should procure continuation of the insurance represented by the expiring $10,000 policy on the building "in rear". There was nothing in the order of the Board indicating that the Board wanted the brokers to increase the coverage of the insurance payable to the bank evidenced by the two policies that were expiring. The Board allotted or parcelled out the identical insurance it had to, and was, carrying under its mortgage contract, among the brokers who were seeking the business. When it "allotted" the $15,000 policy insuring one building to Mr. Gantner, it evidenced no intention that he should buy anything besides new insurance to continue the specified existing insurance. The bank to which the insurance was payable had not requested additional insurance upon the other building in which there was a public warehouse and which carried a much higher premium rate, and there is nothing in the record to indicate that any such increase of outlay for insurance payable to the bank was in contemplation by the Board. If such had been the intention, it is not credible that a policy would have been taken with the same old description long used to cover only the one building and not the other.[1]

---

[1] That prior insurance should be considered on the question of intention is assumed as elemental in Williams Mfg. Co. v. Insurance Company, 93 Vt. 161, 106 A. 657, cited in 26 C.J. 88, Sec. 84. I think it is.

In pursuance of the order of the Board, Frank L. Mackey procured a new policy for $10,000 which is not shown in evidence, and Walter Gantner procured two new policies, identical in form, for $7500 each, one of which is the policy in suit. The lady in the employ of the insurance agency who used the typewriter to make out the policy sued on testified that Mr. Gantner told her what they wanted insured and that she prepared the policy as per his instructions. Her testimony contradicted the assertion of Mr. Gantner that the "City Hall group of buildings" was the property upon which he was to procure the insurance. She says she wrote the description of the same single building in the new policy which was insured by the expiring policy "as per his instructions."

The description of the property typewritten into the new policies was in substantially the same words of description that had been used in the expiring policy. That is, the old policy covered a "building, situated North side of Delmar Avenue, between Oberlin and Trinity Avenues, Block No. 4 Subdivision No. 1 University City, Missouri", and the policy issued on his instructions covered a "building located North Side of Delmar Blvd. between Trinity and Oberlin Ave. known as 6801 Delmar Blvd. University City, Mo." The premium rate for the three years' insurance appeared on the face of the new policy in large type, .867, and was the same rate within one-tenth of one cent as the rate of the expiring policy.

Practically the only difference between the description used in the expiring $15,000 policy which was allotted by the Board of Aldermen to Mr. Gantner and the new policies which he procured to continue the insurance, is that in the expiring policy there was no reference to the street number of the building insured and in the new policy the words "known as 6801 Delmar Blvd" were added to the description of the building insured. In this respect there was a reversion to the description of the octagonal building used in the tornado policies above referred to, wherein the octagonal building was given the Delmar street number 6801, and the building that was burned was described as being "in the rear". The evidence was conflicting whether a number was ever in fact physically upon the octagonal building, but it was shown that the number assignable to that building under the City regulations would be 6801 Delmar. There was also testimony for the City that the other City buildings in the rear of the octagonal building, which open onto Harvard Avenue, were sometimes referred to or known by the same number, and that mail was directed to occupants of the other buildings under that number. But no regulation was shown to justify giving a Delmar street number to the buildings that let out on Harvard Avenue.

The City introduced in evidence the check with which it paid for the policy in suit, which contained a notation that it was in payment of insurance on the "buildings" on its land. It proved that the octagonal building and the rectangular building, as well as the passageway between them, were all built at the same time—as an integral and not segmented construction. That heat, light and power were brought into the octagonal building from the rectangular building through the passageway, and that both structures had been built originally to house the plant of a magazine publishing concern. The uses to which each part of each structure had been put, and the details of occupancy at the time of the issuance of the policy and at the time of the fire, were also shown by the City, and it was argued that in the light of the evidence the description in the policy could be found to cover the rectangular building which was burned. The argument was then pressed that under Missouri law (as generally) the policy should be construed liberally in favor of the assured and that when so construed it could be read to cover both the octagonal building and the rectangular building, and that the City was entitled to a verdict as a matter of law.

The Company concedes that a contract of insurance is ordinarily to be construed against the insurer in the event of any ambiguity therein, because the language of the policy is of its choosing, but contends that where there is dispute as to the identity of a person whose life is insured, or the identity of property which is insured, the rule may not be carried to unreasonable conclusions. East & West Ins. Co. v. Fidel, 10 Cir., 49 F.2d 35; Freed Realty Co. v. National Fire Ins. Co., 161 La. 102, 108 So. 228; Jefferson County Bank v. Insurance Company, 251 Ky. 502, 65 S.W.2d 474, 475; Peony Park v. Security Ins. Co., Neb., 289 N.W. 848. The octagonal five-story

302

building occupied mainly by the City as its City Hall is located on the north side of Delmar Boulevard and is known as 6801 Delmar Boulevard, and is therefore aptly described in the policy sued on. The buildings to the rear of it on the same block 4 which open onto the west side of Harvard Avenue could not be brought within the coverage of the policy except by a determination that the structures were altogether "a building" within the meaning of the word "building" in the policy. The word building is synonymous with structure or edifice. Undoubtedly circumstances may be presented where several structures have been so connected, combined or integrated that the aggregate may in common parlance come within the designation of a "building". But no rigid rule of law can be found to settle for all cases whether or not such integration of structures into one building has occurred.[2] In many cases the true intention of the parties who used the word "building" in their contract will remain a question of fact. I think the trial court committed no error prejudicial to this appellant when in this case it submitted the issue to the jury under the instruction that they should find for the City if it appeared on consideration of the language of the policy and the facts and circumstances in evidence that the policy was capable of being construed by a person of ordinary prudence as covering the property where the fire occurred. Queens Ins. Co. v. Meyer Milling Co., 8 Cir., 43 F.2d 885.

On the whole case, I think it is clear that the City did not pay the insurance company to insure the rectangular building where the fire occurred and had no intention of buying any insurance for the bank except continuation of the insurance then expiring; the Company had no thought or intention to insure the building opening on Harvard containing a warehouse, and the description in the policy, read in the light of the use long made of the same words in the City insurance contracts to designate the octagonal building and not the rectangular building— all the circumstances taken together leave no doubt in my mind that the verdict of the jury was just and right. The rules about latent and patent ambiguities and the court's power to resolve an ambiguity as a matter of law, are all to further justice. I think the judgment here could and should be affirmed without doing any violence to them.

[2] See Alterman v. Home Ins. Co., 195 App.Div. 151, 186 N.Y.S. 462.