title. Whatever interest the plaintiff had in the action she acquired by virtue of the provisions of the will of her mother, and the subsequent payment by her of the mortgage. She had acquired nothing from the executor in Mrs. Theall's will, nor did her interest in any way depend upon his act, nor did he have any interest in the subject-matter of the action. He was not, therefore, being examined either in his own behalf, or in behalf of a party succeeding to his title or interest. Wallace v. Straus, 113 N. Y. 238, 21 N. E. 66. If we are correct in this, then it follows that the testimony ought not to have been excluded on the ground that it was incompetent under the section of the Code referred to.

Nor can it be said that the answers to such questions would have been irrelevant or immaterial. It is hardly necessary to speculate on what the answers would have been, had the witness been permitted to give them; but it is possible they would have tended to establish that Mr. Theall, after the death of his wife, with full knowledge of the conditions and provisions of her will, stated that he and his daughter would occupy the house; that he had entered into an arrangement with her that, if a demand were made for the payment of the mortgage, she would advance a sum sufficient to pay it off; and that he was thereafter to pay her his share, or that she was to have a claim for such sum against his estate, in case of his death, and by reason of such agreement she paid the mortgage. If such facts had been made to appear, it can hardly be said that they would have been irrelevant or immaterial. Wright v. Garlinghouse, 26 N. Y. 539; Wellington v. Kelly et al., 84 N. Y. 543; City of Albany v. McNamara, 117 N. Y. 168, 22 N. E. 931, 6 L. R. A. 212. The provision of the will relating to the rent was made for the benefit of the plaintiff and Mrs. Theall's husband, and we think the correct construction to be placed upon it is that upon the husband and plaintiff assuming and agreeing to pay the mortgage, taxes, insurance, and repairs, they were entitled to occupy the house, instead of receiving the rent; and, if this be the correct construction, then, clearly, the testimony which was excluded bore directly upon the subject which was being investigated.

The judgment appealed from, therefore, must be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.

---

(86 App. Div. 66.)

NELSON et al. v. TRADERS' INS. CO. OF CHICAGO, ILL.

(Supreme Court, Appellate Division, Fourth Department. July 7, 1903.)

1. FIRE INSURANCE—GOODS—DESCRIPTION OF BUILDING.

 A building was three stories high on the street. In the rear were three so-called basements; the upper one extending under the entire building, and the other two only under the rear half. The floor on the level with the street formed the roof for the upper basement, and the building was in fact three stories, both in the front and in the rear. *Held*, that the structure was one building, within the meaning of a fire insurance policy on plaintiff's goods in one part of the building, describing it as a three-story brick building, with basements, and containing a clause terminating the insurance if any part of the building should fall.

**2. SAME—STANDARD POLICY—CONSTRUCTION.**

Under Laws 1886, p. 720, c. 488, establishing a uniform policy of fire insurance, and making it compulsory on insurance companies, the provisions of the policy must be construed according to the plain meaning of the language employed.

**3. SAME—FALL OF BUILDING.**

Where a substantial part of a building in which plaintiff owned insured goods fell, and the goods were injured in extinguishing the resulting fire, he could not recover insurance under the provisions of a standard fire insurance policy, as established by Laws 1886, c. 488, stipulating that "if the building or any part thereof fall, except as the result of fire, all insurance by this policy on such building or its contents shall immediately cease."

Spring and Hiscock, JJ., dissenting.

Action by Le Roy E. Nelson and another against the Traders' Insurance Company of Chicago, Ill. A verdict was directed for plaintiffs. On motion for new trial, ordered to be heard in the first instance in the Appellate Division. Motion granted.

The action was commenced on the 5th day of November, 1902, to recover upon a policy of fire insurance (standard form) issued by the defendant, and which purported to insure a stock of goods or merchandise owned by the plaintiffs against loss or damage by fire. The defense interposed was that before the fire the building in which the insured property was located fell, and that thereupon the insurance immediately ceased, by the terms of the policy. This alleged defense presents the only question involved upon this appeal.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and HISCOCK, JJ.

J. N. Hammond, for plaintiffs.
Hiram R. Wood, for defendant.

McLENNAN, J. There is substantially no conflict in the evidence. The policy in question, which was the standard form, contained the provision: "If the building or any part thereof fall, except as the result of fire, all insurance by this policy on such building or its contents shall immediately cease." Plaintiffs were engaged in the mercantile business in the village of Seneca Falls, N. Y. For that purpose they occupied, as tenants, the westerly store of a brick building situate on the south side of Falls street, in said village; and the insured property, which consisted of a stock of merchandise and store fixtures, was located therein. The four outside walls of the building were of brick. It was three stories high on Falls street, and extended back to the river, where there were three so-called basements, the upper one extending under the entire building, and the other two only under the rear half of the structure, so that the building was in fact three stories both in front and rear; but, owing to the rapid descent of the ground from the street to the river, the floor which was on a level with Falls street formed the roof or ceiling of the so-called upper basement. The floor on a level with Falls street was divided into two equal parts by a stairway leading from the street to the stories above, which stairway was formed by lath and plaster partitions. The floor on a level with Falls street

¶ 3. See Insurance, vol. 28, Cent. Dig. § 749.

on the westerly side was occupied by the plaintiffs for the conduct of their business, as was also that portion of the first or upper basement immediately beneath. The portion of the building east of the stairway, and the upper floors of the entire building, as well as the upper basement immediately under the easterly half of the building, was occupied as a hotel, and there was free access between all parts of such hotel. The two lower basements were occupied for purposes in no manner connected with the business of the plaintiffs. The store of the plaintiffs on Falls street extended to the extreme rear of the building, and the basement occupied by them extended under such entire store. There was no interior access to either from the other parts of the building. On the morning of March 23, 1902, the east wall of the building, which was the east wall of the hotel, fell out and collapsed; causing the stories immediately above, and some portion of the roof or stories over plaintiffs' store, to fall into the hotel premises. A heated coal stove having been precipitated into the mass of débris, a fire immediately started; and in attempting to extinguish such fire the fire department of the village necessarily damaged the plaintiffs' property to the amount for which the verdict was directed. Plaintiffs' property was in no manner injured by the falling wall; their stock of goods was not damaged thereby; and they were in a situation to have continued their business, except for the fire which resulted, and the action of the fire department in attempting to extinguish the same. Notwithstanding the falling wall, and independent of any other circumstance, the plaintiffs could not even have abandoned the premises occupied by them, and thus have avoided the obligation to pay rent to their landlord, for the reason that the premises occupied by them were not in any sense made untenable on account of the falling wall. Their only damage or inconvenience was occasioned because of the fire which resulted from the collapse of the portion of the building occupied as a hotel.

The structure included within the four brick walls was clearly one building. The evidence is uncontradicted that it was built as such and at one time, and it is so described in the policy in suit; the language being, "in a three-story brick, metal roof building with basements, situate on the south of Falls street in Seneca Falls, N. Y." Then follows the clause, "If the building or any part thereof fall," etc. It may be assumed that the clause in question was inserted in the policy for the purpose of limiting or restricting the hazard or risk of the insurers.

That the risk of fire is greatly increased by the collapse of a portion of a building is self-evident. In fact, in the case at bar, except for such collapse, no fire would have resulted, and no damage would have been done to plaintiffs' property. But whether the falling of the building, or a part of it, did or did not increase the hazard, it is unimportant to inquire. The defendant had a right to provide that its liability should cease immediately upon the happening of such event, if its intention so to do was expressed in clear and unambiguous terms in the contract of insurance. We think such is the clear meaning of the language employed: "If the build-

ing or any part thereof fall, except as the result of fire, all insurance by this policy on such building or its contents shall immediately cease." A part of the building in question fell, not as a result of fire, and the defendant simply asks that it be determined that all insurance by this policy (the policy in suit) on the contents of such building ceased immediately upon the falling of a substantial part of such building.

It should be borne in mind that the clause in question was made a part of the policy by legislative mandate (chapter 488, p. 720, of the Laws of 1886), which provided for a uniform policy of insurance, known as the "Standard Policy," and which makes its use compulsory upon insurance companies. It has been repeatedly held that the provisions of such policy should be construed according to the plain meaning of the language employed. Quinlan v. Providence-Washington Fire Ins. Co., 133 N. Y. 356, 31 N. E. 31, 28 Am. St. Rep. 645; Moore v. Hanover Fire Ins. Co., 141 N. Y. 219, 36 N. E. 191; Peabody v. Satterlee, 166 N. Y. 179, 59 N. E. 818, 52 L. R. A. 965.

In Hicks v. British-American Fire Ins. Co., 162 N. Y. 284, 56 N. E. 743, 48 L. R. A. 424, the court said:

"It is unnecessary to present the reasons which induced the Legislature to require these conditions precedent to a recovery upon a policy of insurance. It is sufficient for our purpose that the Legislature declared that it should be so, and we should see to it that the general trend of our decisions is toward the enforcement of the legislative command, instead of its nullification."

So far as we have been able to discover, the particular clause in question has not been judicially interpreted by the courts of this state, perchance for the reason that its language is so plain that such interpretation has not been thought necessary. The precise question, however, was presented in the case of Kiesel & Co. v. Sun Office of London, and was decided by the Circuit Court of Appeals, Eighth Circuit (88 Fed. 243, 31 C. C. A. 515). The policy in that case contained a clause precisely like the one contained in the policy in suit. The defendant in that case assumed to insure goods in a warehouse. A portion of the building fell, and it was urged by the defendant as a defense that the fire which destroyed plaintiff's goods was the result of such fall, and started subsequent to it. In discussing that proposition, the court (Sanborn, J.) said:

"Naturally the dominant thought throughout the entire agreement [the policy], and hence the key to its interpretation and the measure of the liability of the company under it, is the cause of the destruction or damage. Generally speaking, if that cause is fire, there is liability. If fire is not the cause, there is no liability. In the particular clause in issue in this case the same purpose controls, the same key interprets, the same test determines the liability. If the fall of the building was caused by fire, then the defendant was liable, whether the goods insured were burned before or after the fall; but if the fall occurred before the fire attacked the goods, and if that fall was caused by an earthquake, by a waterspout, by a cyclone, or by any other cause than fire, the express agreement was that, when the fall occurred, the insurance ceased, and there was no liability. If the building was on fire, and if it would not have fallen without the fire, its fall might well be said to have been the result of the fire; but if it was on fire, and if it would have fallen by the force of the wind if there had been no fire, then its fall

could not be said to have been the result of the fire, and the defendant was not liable. * * * The court below * * * correctly charged that, if the fall was caused by the fire, the insurance company was liable, but that, if it resulted from some other cause, it was not. In reaching this conclusion, we have not overlooked the customary appeal of counsel in insurance cases to the rule that, where the terms of a policy are ambiguous or of doubtful meaning, its words should be construed most strongly against the company. Guarantee Co. v. Mechanics' Savings Bank & Trust Co., 47 U. S. App. 91, 101, 26 C. C. A. 146, 152, 80 Fed. 766, 772. But it is equally well settled that 'contracts of insurance, like other contracts, are to be construed according to the sense and meaning of the terms which the parties have used; and, if they are clear and unambiguous, their terms are to be taken in their plain, ordinary, and proper sense.' Imperial Fire Ins. Co. v. Coos Co., 151 U. S. 452, 463, 14 Sup. Ct. 379, 381, 38 L. Ed. 231. We are unable to discover anything ambiguous, doubtful, or obscure in the language of the clause over which this controversy rages. It was competent for these parties to fix the terms of their agreement. It is admitted that the contract was one for indemnity against loss caused by fire, and not against loss from other causes."

The reasoning of the learned judge who delivered the opinion in the case referred to would seem to be unanswerable, and it applies with equal force to the case at bar, because, as we have seen, the clause in the policy which was the subject of dispute in that case is identical with the clause in the policy in suit.

The case of Huck and others v. Globe Ins. Co., 127 Mass. 306, 34 Am. Rep. 373, we think, is also an authority for defendant's contention that the contract of insurance in this case ceased immediately upon the falling of the wall of the building in question, which concededly occurred before any fire had started upon the premises.

We appreciate that the conclusion which we have reached may logically lead to strange results. To illustrate: Suppose that the property of the tenants occupying one of the large buildings in the city of New York, perhaps numbering hundreds or thousands, is insured against loss or damage by fire under the standard policy; that a portion of such building remote from the part occupied by many of the tenants falls, and as a result a fire starts, which destroys the whole building and the property of the several tenants. According to our interpretation of the clause in question, no one of them could recover upon his policy of insurance, because a part of the building had fallen from a cause or causes other than fire. But if the language of the clause be considered, it is apparent that its very purpose was to limit the hazard of the insurers when just such a contingency should arise. At all events, the clause is in the policy—put there by command of the Legislature. Its meaning is clear and unambiguous, and the duty of the courts is discharged by giving to it full force and effect. If there should be some other result in a case like the one suggested, the remedy is with the Legislature, and not with the courts.

In the case at bar a substantial part of the building in which the plaintiffs' property was located fell, not as the result of fire; and, by the express terms of the policy, it is provided that thereupon the insurance upon such property which is a part of the contents of the building immediately ceased. We think a reasonable interpretation of the clause in the policy compels us to hold that, immediately upon

the falling of the east half of the building in question, the insurance upon plaintiffs' property ceased. It follows that the defendant's exceptions should be sustained, the verdict in favor of the plaintiffs set aside, and a new trial granted, with costs to the defendant to abide the event.

Defendant's exceptions sustained, motion for new trial granted, with costs to the defendant to abide the event.

ADAMS, P. J., and WILLIAMS, J., concur.

SPRING, J. (dissenting). The building occupied by the plaintiffs was as distinct from the adjoining store on the east as if they had been separated by a brick wall and were not under the same roof. The walls were of studding, lath, and plaster, with no communication between them, and each store was carried on by itself. When the easterly wall toppled over, the building occupied by the plaintiffs was tenantable, and they could have conducted their business within it the same as before the mishap. The clause in the policy which the defendant invokes, while to be interpreted like any provision in a contract, is to receive a reasonable construction, in the light of the surrounding circumstances, and the manner in which business is conducted often in many stores under the same roof. If a dozen men erect a building under one roof, and with no brick walls between the stores composing it, but divided off by partitions of lath and plaster, each would own and insure his own part. Still the building is one building, but the stores are held by individual titles, as distinct as if they were not connected at all. I do not believe the falling in of one end of the long row terminates all insurance on the contents of the other stores. If so, if a fire should, an hour after the collapse of the east side, start by spontaneous combustion or the explosion of a lamp in the west store, and burn that store and its contents, the insurance company is relieved from payment, because the falling of the other end of the building nullified the policy, and every policy on every store and its contents, although the collapse had nothing to do with the destruction by fire. It seems to me a more reasonable construction to hold that the term "building" refers to the particular structure occupied by itself as a store for any especial business, instead of including the whole row or block because they happen to be under one roof, or use adjoining party walls.

Defendant's exceptions should be overruled, and judgment ordered for the plaintiffs on the verdict.

HISCOCK, J., concurs.