Charlie WINSTON and Mildred Winston,
Plaintiffs-Respondents,

v.

HARTFORD FIRE INSURANCE COM-
PANY, a Corporation, Defendant-
Appellant.

No. 7672.

Springfield Court of Appeals.
Missouri.

Oct. 15, 1958.

Farrington & Curtis, E. C. Curtis, Thomas G. Strong, Springfield, for appellant.

Stemmons & Stemmons, Mt. Vernon, for respondent.

McDOWELL, Judge.

This is an action on a fire insurance policy. The issues presented by the pleadings are: 1. Whether or not the building destroyed by fire was located on the property described in the policy. 2. Whether or not plaintiff had an insurable interest in such building, and, 3. Was the building, at the time the policy was issued, within the terms of the policy or covered by the provisions thereof?

The cause was tried by aid of a jury and judgment rendered for plaintiffs in the sum of $500. Defendant appealed.

In addition to the $5,000 coverage on plaintiffs' one and one-half story residence situated on a two acre suburban tract in Sec. 19, Twp. 28, R. 26, Lawrence County, Missouri, the policy provided: " * * * such insurance shall include building equipment and fixtures and outdoor equipment pertaining to the service of the premises (if the property of the owner of the dwelling), while located on the premises described on the first page of the policy, but not trees, shrubs, plants or lawns.

"The Insured may apply up to ten per cent (10%) of the amount specified for the dwelling, to cover private structures appertaining to the dwelling described and located on the premises, but not (a) structures used in whole or in part for * * * farming purposes, * * *"

We here state the evidence offered which is decisive of the issues involved. Plaintiff, Mildred Winston, and her brothers, Eldred and Harold Roberts, acquired title to 112 acres of farm land in Sec. 19, Twp. 28, R. 26, Lawrence County, Missouri, as heirs of their parents. There was originally located on this tract of land the one and one-half story dwelling, described in the insurance policy, and a barn 30 x 40 feet, which had attached thereto a building, referred to in the testimony as a garage or shed, 10 x 30 feet. This smaller structure was a frame building on a separate foundation. It had a tin roof and one side composed of boards that ran vertically. It had no floor. The west end of the small building was inclosed by a door or wall. The east end, which faced the dwelling, was open. There was no foundation at either end but a strip of concrete ran the length of the building on the north side. The barn wall served as one side of the garage or shed.

Plaintiff, Charlie Winston, testified that the barn and shed, or garage, were under one roof. He gave this testimony:

"Q. You are not asking the insurance company to pay you because it was a separate building? A. No."

This witness stated that he assumed the barn and garage, or shed, were all built at the same time. A picture of the destroyed building was offered in evidence as defendant's exhibit I, and plaintiff, Mildred Winston, testified that it seemed from the picture that the barn and garage were one building, under the same roof, and that the rafters from the barn came right on across into the garage but she stated there was a separate foundation under the garage.

Plaintiffs' evidence was to the effect that the shed or small building was always used for a garage while he lived there. He stated that his wife's father had stored his automobile in this shed prior to his death. He testified:

"Q. And how often did you park your automobile in that building? A. Every night with the exception of the time of the fire".

He testified that at the time of the fire there was a tractor in the garage building which belonged to Eldred Roberts and that it was destroyed by the fire. He said this was the only time he remembered that a tractor was placed in the shed.

It was undisputed that at the time the policy of insurance was issued the main barn was used in the storing of corn, hay, oats and fertilizer and it was admitted that the tractor was attached to a loaded wagon of corn. There is no contention that the insurance policy covered the entire building. The evidence shows that the east side of the garage, or shed, is 175 feet west of the dwelling house.

Charlie Winston, plaintiff, made application for and received the policy of insurance sued on. The policy was written by A. H. Schmidtke, Agent of the defendant-company, who lives in Mt. Vernon, and, at the time of the application, Winston told Schmidtke that it was agreed between the heirs that he and his wife, Mildred, would

receive the house and two acres of land as their portion of the property. He gave this testimony:

"Q. You told him you were to receive the house under that agreement? A. Yes.

"Q. And a two acre tract of land? * * * A. I may have, yes.

"Q. You don't remember telling him that in the two acre tract you were to receive that the line was one hundred twenty-five feet, the west line was one hundred twenty-five feet from the house under the agreement? A. I could have, but I don't recall any definite line at that time.

"Q. Was that the basis of your agreement you had with your wife's brothers, that your line was to be one hundred twenty-five feet west of your house? A. It turned out to be that way in February.

"Q. You knew that at the time you saw Mr. Schmidtke, did you not? A. Not for sure.

"Q. You actually set that line one hundred twenty-five feet back west of the house though didn't you? A. Yes. It was set around one hundred twenty-five feet from the house."

In his deposition Mr. Winston stated he did tell Mr. Schmidtke at the time he applied for the policy of insurance that he and his wife were to get a two acre tract of land.

The evidence shows that the only buildings on the two acres of land actually received by plaintiffs in the division of the land were two chicken houses, smoke house and tool shed. It is admitted by plaintiffs that they got a suburban rate of insurance on the house because it was near enough to town and that at the time the policy was issued, it was explained that the farm rate would be higher.

Mrs. Winston testified that the reasonable value of the garage building destroyed was $500; that she was basing her figure on the amount it would cost to construct a new garage.

A. H. Schmidtke testified for defendant that he was in the lumber and insurance business in Mt. Vernon; that he wrote the policy of insurance in issue. He said Mrs. Winston first came in and told him that it was agreed between the heirs that she was to get the residence consisting of two acres, more or less, and desired to have insurance on said dwelling. She said she did not know the exact line but that it would be 100 to 150 feet west of the dwelling; that she was not sure it would take in the first shed; that the barn farther west would go to Eldred.

Witness testified that Charlie Winston came in later and wanted to insure the dwelling and its contents. He stated he was familiar with the premises and had known it for several years; that Mrs. Winston said she intended living in the property and he informed her that he could insure the property under suburban rate, she said she did not intend to use the property for farming operations. Witness said he told plaintiffs that since the barn was not on the property he could use the suburban rate; that the farm rate was $1.00 and the suburban rate was $.38. He testified that the barn had been built some thirty five years ago. On cross examination witness testified that he had known Mildred Winston, her brothers and their parents many years; that he had known Mildred Winston all her life.

In rebuttal Mildred Winston denied that she discussed the buying of insurance with Schmidtke. She said she was never in his office.

At the close of the evidence defendant filed a motion for directed verdict. Two of the grounds relied on were:

1. Because the evidence conclusively shows the building sued for was used, at least in part, for farming purposes and not covered by the policy.

2. That the building was not located on insured premises.

In our opinion we will refer to respondents as plaintiffs and appellant as defendant, the position occupied by the parties in the lower court.

Defendant first contends that the trial court erred in failing to sustain its motion for directed verdict at the close of the evidence.

On appeal the court does not weigh evidence in a jury tried case, and may interfere only when there is a complete absence of probative facts to support the verdict. Siegel v. Ellis, Mo.Sup., 288 S.W.2d 932. And, in determining whether the trial court erred in overruling defendant's motion for a directed verdict at the close of all the evidence, appellate court must consider only the evidence most favorable to plaintiff and reasonable inferences to be drawn therefrom, and must disregard defendant's evidence unless it aids plaintiff's case. Eddy v. Missouri Public Service Co., Mo. App., 309 S.W.2d 4; Adkins v. Sutherland Lumber Co., Mo.App., 307 S.W.2d 17; Leek v. Dillard, Mo.App., 304 S.W.2d 60.

The first reason assigned, in support of this alleged error, is that the evidence conclusively shows the building referred to in the pleadings was used, at least in part, for farming purposes and hence not covered by the policy of insurance.

An insurance policy is a written contract between the insurer and the insured and each is bound by its terms. Cole v. Kansas City Fire & Marine Ins. Co., Mo.App., 254 S.W.2d 304, 306 [1]; Central Surety & Insurance Corp. v. New Amsterdam Casualty Co., 359 Mo. 430, 222 S.W.2d 76; Warren v. Royal Exchange Assur. Co., Mo.App., 205 S.W.2d 744.

If the language used in the insurance contract is plain and unambiguous, there is no room for construction and its terms must be accepted as written. Cole v. Kansas City Fire & Marine Ins. Co., su-

pra, 254 S.W.2d at page 306 [2]. (See authorities cited).

The insurance contract sued on herein provides for coverage of $5,000 "On the frame 1½ Story, Comp. Roof dwelling, situated on a two acre Suburban tract in Section *Nineteen* (19), Township, Twenty eight (28), Range Twenty-six (26), County of Lawrence, State of Missouri." And, under Dwelling and Contents Form attached, the policy reads: "When the insurance under this policy covers a dwelling, * * *

"The Insured may apply up to ten per cent (10%) of the amount specified for the dwelling, to cover private structures appertaining to the dwelling described and located on the premises, but not (a) structures used in whole or in part for * * * farming purposes, * * *"

It is plaintiffs' contention that the building 10 x 30 feet, referred to in the evidence, was a "garage" and was included within the terms of the policy.

It is defendant's contention that the "garage" or "shed" was actually being used for farming purposes at the time of the fire and, further, that there was only one structure involved, which was being used, in part, at the time of the fire, for farming purposes and not covered by the insurance policy.

Under the evidence it is admitted that the barn to which the shed, or garage, was attached had always been used for farming purposes and was being so used at the time the policy was issued. Therefore, if the barn and garage constitute one building, then it necessarily follows that the building would not be protected by the policy because it would clearly be used, at least in part, for farming purposes and excluded from coverage under the policy. An examination of plaintiffs' evidence conclusively shows that the building, 10 x 30 feet, claimed by plaintiffs to be a garage, was erected some time after the main part of the barn was built. It ran the full

length of the barn, was attached thereto as a shed and the barn formed one side of it. The exact date is not given as to the time the barn or shed was erected. One witness said he had known the barn and shed for thirty five years. Plaintiffs' testimony is that Earl Roberts, father of Mildred Winston, plaintiff, had used this shed to store his car in, prior to his death in 1946. Charlie Winston, plaintiff, testified that he and his wife, together with his mother-in-law, lived in the dwelling house after the death of his wife's father, and he kept his car in the shed every night excepting the night of the fire, at which time a tractor, attached to a load of corn, was stored in it and burned. Winston said this was the only time he remembered that the shed was used for the storing of a tractor. This 10 x 30 shed in no respect could be considered a separate building, even though the north side of the shed had a concrete foundation. It was actually a part of the barn connected by rafters extending from the barn over the shed and was under the same roof. As we stated, before, there is no dispute that the barn was being used for agricultural purposes. Charlie Winston testified that he was not asking the insurance company to pay him because the "garage" or "shed" was a separate building. He stated that he assumed the barn and garage were all built at the same time. A photograph of the building, including both barn and shed, was offered in evidence which showed the barn and garage to be one building. Mildred Winston testified that it seemed, from the picture, that the barn and garage were one building, under the same roof, and that the rafters of the barn came right on across into the garage. She did state the garage had a separate foundation.

■ We think the evidence shows that the barn and the shed in issue here were used for agricultural purposes on this 112 acre tract of land. True enough, plaintiff's father, Earl Roberts, might have stored his automobile therein, and, after his death, his son-in-law and daughter, plaintiffs here-

in might have kept their car in this shed but such use did not sever the shed from the barn and make it a separate building. It still was a part of one building.

■ In University City v. Home Fire & Marine Ins. Co., 8 Cir., 114 F.2d 288, 298, [21, 22], this law is stated:

"We do not understand the Missouri Court of Appeals, and other courts which have considered the use to which the property was put, to hold, however, that of necessity the separate parts of a structure must be used and devoted to the same common purpose in order to be considered one unit. In some circumstances use is among others a relevant and proper test to determine whether or not a "structure is integral. But if the various portions of a structure are so physically connected in construction as to form one integral unit, the use to which the separate parts are put is necessarily immaterial. Fortesque v. Carroll, 76 N.J.Eq. 583, 75 A. 923, Ann. Cas.1912A, 79; Nelson v. Trader's Ins. Co., supra [86 App.Div. 66, 83 N.Y.S. 220]; Prussian Nat. Ins. Co. of Stettin, Germany, v. Terrell, supra [142 Ky. 732, 135 S.W. 416]; Robinson v. Pennsylvania Ins. Co., 87 Me. 399, 32 A. 996. Normally, the word 'building' connotes matters of construction rather than matters relating to the use or mode of occupancy. * * *"

In Still v. Connecticut Fire Ins. Co., 185 Mo.App. 550, 172 S.W. 625, 626 [3], the question here presented was considered by the Kansas City Court of Appeals and the court stated:

" * * * The question as to what the policy covers depends upon whether or not the silo could be said to form a part of the building, and what was the intention of the parties when the insurance contract was entered into. Were the barn and silo so constructed as to constitute one building and bring the structure within the meaning of that term so as to make it reasonable that it was the intention of the parties that the whole should be insured?

It is true, the structure which defendant would now term the barn proper was built a year or more before the silo was erected. But this difference in time of erection would make no difference if the two were so erected and joined together in such way as to constitute in fact one building. Whether or not a structure added to a building is to be considered a part of the whole building depends upon a number of things. It would seem that if the addition was erected in such close proximity to the other structure as to be physically joined thereto, and is so arranged that the addition can only be used in connection with the main structure, and that the two are devoted to one general common purpose and are occupied and used by one owner, then they could be treated as one structure or building. * * *" Prestigiacamo v. American Equitable Assur. Co. of New York, 240 Mo.App. 839, 221 S.W.2d 217; School Dist. No. 2 of Otsego Tp. v. American Ins. Co., 262 Mich. 385, 247 N.W. 906.

We have examined the authorities cited by plaintiffs under this allegation of error and find that they do not bear out plaintiffs' theory. The facts in each of the authorities are so different from the facts in the instant case that they do not aid plaintiffs. It must be remembered that every case must be decided upon the facts of the particular case.

Under the law as stated we find that the barn and shed constitute one building which is used, in part, for farming purposes and we agree with the contention of the defendant that the building was excluded from coverage under the terms of the insurance policy and that defendant's motion for directed verdict should have been sustained.

We likewise, agree with defendant's second contention under this allegation of error, that the garage, which is the subject of this suit, was not located on insured's premises and was not intended to be covered by the policy.

The evidence shows that Mildred Winston and her two brothers, Eldred and Harold Roberts, each owned an undivided one-third interest in the 112 acres of land in evidence at the time the policy of insurance was issued; that at that time it had been agreed between the heirs that Mildred Winston receive a two acre tract of land on which the one and one-half story dwelling was located; that the west line of such property was to be 125 feet west of the dwelling house. The evidence is that within this described boundary there were some other sheds. Plaintiffs' evidence shows that the barn and garage-shed sued for herein were 175 feet west of the dwelling house; that since the policy had been issued this division had been carried out by the parties and the garage site sued for herein is located on the part of the farm received by Eldred Roberts.

Charlie Winston, in his deposition, admitted that he told defendant's agent, Schmidtke, when he took out the policy that there had been an agreed division of the 112 acre farm; that his wife, Mildred, was to receive the dwelling house and a two acre tract of land; that the west line of that property was 125 feet west of the dwelling. He admitted that the agent explained to him that if no part of this property was to be used for farming purposes he would receive a suburban rate of $.38, whereas, if any of the property was to be used for farming purposes, the rate would be $1.00. He admitted he was accorded the suburban rate. Plaintiffs offered no evidence that they ever mentioned to defendant's agent, when the policy was being issued, that this shed or garage was located on the two acre tract described in the policy. It would seem to us that plaintiffs seek to recover on the theory that they had a one-third interest in the entire farm at the time the policy was issued, and, by that means, might recover regardless of whether or not the parties intended, at the time the policy was issued, that the garage was to be covered. We think this would be an unreasonable construction of

the terms of the insurance policy. There can be no doubt from the evidence offered by plaintiffs and from the terms of the insurance policy, itself, that the intention of the parties was to cover the dwelling house and two acres of land, being the share of the estate which the heirs had agreed that plaintiffs should have and being the description of the land they actually received. We find that plaintiffs failed to offer substantial evidence to support the verdict of the jury and that the trial court should have sustained defendant's motion for a directed verdict.

It is unnecessary to pass upon the other alleged errors.

Judgment reversed and remanded with directions that judgment for plaintiffs be set aside and judgment entered for defendant.

STONE, P. J., and RUARK, J., concur.