**IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA**

2023 Fall Term

_____

No. 22-ICA-173

_____

**FILED**

**November 14, 2023**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

MARK SCAFELLA,
Plaintiff Below, Petitioner,

v.

ERIE INSURANCE COMPANY and STANLEY GEHO,
Defendants Below, Respondents.

_____

Appeal from the Circuit Court of Marshall County
Honorable Jeffrey D. Cramer, Judge
Civil Action No. 19-C-116

AFFIRMED

_____

Submitted: October 31, 2023
Filed: November 14, 2023

John R. Angotti, Esq.                    Amy Smith, Esq.
Chad C. Groome, Esq.                     STEPTOE & JOHNSON, PLLC
ANGOTTI & STRAFACE, L.C.                 Bridgeport, West Virginia
Morgantown, West Virginia                Counsel for Respondents
Counsel for Petitioner

CHIEF JUDGE DANIEL W. GREEAR delivered the Opinion of the Court.

GREEAR, Chief Judge:

Petitioner, Mark Scafella appeals the September 12, 2022, order of the Circuit Court of Marshall County granting Erie Insurance Company ("Erie") and Stanley Geho summary judgment in the underlying declaratory judgment action. On appeal, Mr. Scafella argues that the circuit court erred in granting summary judgment as there exists a genuine issue of material fact as to whether Erie waived application of the business purposes exclusion (also described as the "business pursuits" exclusion) in his Erie policy. Further, Mr. Scafella contends that the court abused its discretion in holding that the business pursuits exclusion contained within the *Other Structures* coverage of his Erie policy precluded coverage for fire damage to a structure on his property. Lastly, Mr. Scafella asserts that the court abused its discretion in finding that his claims were not covered by the plain language of the "claw-back" provision of his Erie policy. Based upon our review of the record, we find no error and affirm the circuit court's September 22, 2022, order.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

The underlying case arises from a February 2, 2019, fire on Mr. Scafella's real property located in Terra Alta, West Virginia, and insurance claims he made following that fire loss. In 2017, Mr. Scafella purchased the Terra Alta property known as "Country Chapel Farm" ("Farm"). The farm included a residential home, a large barn with an adjacent milk house, several sheds or smaller barns, and a small country church.

1

At all relevant times, the subject property was insured under a homeowner's policy of insurance issued by Erie, identified as the "ErieSecure Home Insurance Policy" ("policy"). *See* A.R. at 0018. The policy included other structures coverage limits of $101,400, and coverage for personal property of up to $380,250. *See* A.R. at 0100. The *PROPERTY PROTECTION-SECTION 1, OUR PROMISE- Other Structures* provision of the policy contained a standard business pursuits exclusion, which read as follows:

"**We**" will pay for loss to:

    1.    other structures at the "**residence premises**" separated from the dwelling, including garages, fences, shelters, tool sheds or carports.

    Structures connected to the dwelling by only a fence, utility line or similar connection are considered to be other structures.

    2.    construction material at the "**residence premises**" for use in connection with "**your**" other structures.

"**We**" do not pay for loss to structures:

    1.    used in whole or in part for "**business**" purposes [except rental or holding for rental of structures used for private garage purposes); or

    2.    used to store "**business**" property. However, if the "**business**" property is solely owned by "**anyone we protect**," "**we**" do provide coverage for the structure. The "**business**" property may not include gaseous or liquid fuel, unless the fuel is in a fuel tank that is permanently installed in a vehicle or craft which is parked or stored in the structure.

*See* A.R. at 0021 (emphasis original). "**Business**" was defined under the *GENERAL POLICY DEFINITONS* section of the policy as "any full-time, part-time or occasional activity engaged in as a trade, profession or occupation, including farming." *See* A.R. at 0020 (emphasis original). The term structure was not defined within the policy.

Under the *SPECIAL LIMITS – Personal Property Coverage* section of the policy, property described as "[p]roperty on the "**residence premises**" used primarily for "**business**" purposes conducted on the "**residence premises**," including property in storage, held as samples, or held for safe or delivery after sale" had a "total amount of insurance in any one loss" denoted as $2,500. *See* A.R. at 0023 (emphasis original). Also contained in the policy was a document titled *CONTINUATION NOTICE*, which included an express statement that "no business pursuits are conducted at the premises," except as follows, wherein the only item listed was a McCormick CX95 tractor, with an "amount of insurance" noted as $35,000. *See* A.R. at 0043.

It is undisputed that in December of 2016 and January of 2017, Mr. Scafella's then fiancé (Ms. Lisa Smith), obtained two insurance quotes from Erie for subject property, one including an incidental farming endorsement and one without the endorsement.[1]

---

[1] The record reflects that the application for insurance, signed by Mr. Scafella on April 5, 2017, noted a total annual premium of $2,795.29 and did not include the incidental farming endorsement. *See* A.R. at 0311-14. Following the application, the first quote, which including the incidental farming endorsement (noted as "**Livestock: Blanket**"), had a total annual premium quote of $3,440.82. However, the second quote did not include a

Ultimately, Mr. Scafella chose the insurance quote that did not include the incidental farming endorsement, a less costly option. *See* A.R. 0298-0310. It is further undisputed that in completing his application for insurance with Erie for the property at issue, that Mr. Scafella averred that there were no farm animals or pets on the premises and that he did not conduct "any business or occupational pursuits at the premises." *See* A.R. 0311-0316.

Despite indicating to the contrary in his application for insurance, Mr. Scafella does not deny that after taking possession of the property, he began operating a business out of the milk house. That business, Olivia's, LLC ("Olivia's"), was a retail store selling meat, cheese, and sandwiches. Prior to the fire, Mr. Scafella alleges that he had begun to renovate the large barn structure into a catering hall and restaurant (to be known as Sophie's Serendipity, LLC), as part of his plan to develop the farm into a destination wedding venue.

There is no question that the February 2, 2019, fire caused significant structural damage to the large barn and resulted in the loss of numerous items of Mr. Scafella's personal property, which were stored in the large barn structure. Although the milk house, was adjacent and physically abutted the barn, Mr. Scafella claims that it was

---

farming endorsement and had a total annual premium quote of $3,195.48. *See* A.R. at 0303-04 and 0308-09 (emphasis original).

not affected by the fire and that the origin of the fire had nothing to do with the business operations therein.

Shortly after the fire loss, Mr. Scafella filed an insurance claim with Erie for that loss. Property adjuster Stanley Geho was assigned by Erie to handle the claim. As part of his investigation, Mr. Geho visited the fire-damaged property and drew a diagram that depicted the milk house as an addition to the barn structure with an interior doorway connecting the two areas. Mr. Geho's depiction of the premises was consistent with a statement made by Ms. Smith who, during a recorded statement taken by Mr. Geho, described Olivia's as being "in a different part of the [barn] building," but "in the barn itself." *See* A.R. at 0162-69.

During its investigation, Erie initially provided coverage for 120 items identified by Mr. Scafella as his personal property (as opposed to his business property), which were located in the large barn structure, and paid Mr. Scafella $67,640.80. See A.R. at 0402-0412. However, Erie denied the portion of the fire loss claim for the structure of the large barn, under the business pursuits exclusion of the *Other Structures* provision of the policy, as Mr. Scafella was operating a business (Olivia's) out of the structure.

On May 15, 2019, Mr. Scafella filed the underlying three count complaint against Erie and Mr. Geho. In count one of the complaint, Mr. Scafella sought a declaratory judgment on the issue of insurance coverage for the barn structure and, if appropriate,

5

*Hayseeds*[2] damages. In counts two and three, respectively, Mr. Scafella alleged Erie and Mr. Geho's violations of the West Virginia Unfair Trade Practices Act and/or common law bad faith in the handling of his fire loss claim and breach of contract.

In response to the complaint, Erie argued that as Mr. Scafella was operating a business (Olivia's) out of the fire-damaged barn, his fire loss claim for the large barn structure was excluded under the business pursuits exclusion of the *Other Structures* coverage portion of his Erie policy. Mr. Scafella now argues that the denial of his claim in this regard was improper, as Olivia's operated from the milk house, which, he contends, was a separate structure, from the large barn.

On May 19, 2020, the circuit court entered an *Agreed Order Bifurcating and Advancing Determination of Declaratory Judgment Claim*, effectively staying all proceedings, including discovery and trial, relating to the claims in counts two and three of the complaint, until final resolution of the declaratory judgment claim in count one was resolved. Discovery then began as to the declaratory judgment claim.

---

[2] In *Hayseeds, Inc. v. State Farm Fire & Cas.*, the Supreme Court of Appeals of West Virginia held that: "[w]henever a policyholder substantially prevails in a . . . suit against its insurer, the insurer is liable for: (1) the insured's reasonable attorney's fees in vindicating its claim; (2) the insured's damages for net economic loss caused by the delay in settlement, and damages for aggravation and inconvenience." Syl. Pt. 1, *Hayseeds*, 177 W. Va. 323, 352 S.E.2d 73 (1986).

On March 12, 2021, Erie and Mr. Geho filed a motion for summary judgment as to the declaratory judgment claim, asserting that the exclusionary language of the *Other Structures* coverage barred Mr. Scafella's claim. Mr. Scafella asserted that his claim fell within a "claw-back" provision of the exclusion, and that Erie and Mr. Geho had waived the application of the exclusion by issuing the policy with knowledge of Mr. Scafella's business activities on the premises.

The circuit court found that the "milk house and the barn are one structure" but then allowed the parties to complete additional discovery on the issue of the application of the exception to the business pursuits exclusion and supplemental briefing. After supplemental briefing, the court concluded that the evidence on the record does not support Mr. Scafella's claims. Specifically, the court determined that his claims were excluded by the business pursuits exclusion of the Erie policy; that the "claw-back" provision of the Erie policy does not apply; and that there was no waiver by Erie. Having made such findings, the court awarded summary judgment to Erie and Mr. Geho and, ultimately, entered a Rule 54(b) Order finding that the September 12, 2022, *Order Granting Summary Judgment in Favor of Defendants on Count I of Plaintiff's Complaint* should be treated as a final appealable order. This appeal followed.

## II.     STANDARD OF REVIEW

"A circuit court's entry of summary judgment is reviewed *de novo*." Syl. Pt.

1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994). In *Gray v. Boyd*, 233 W. Va.

243, 757 S.E.2d 773 (2014), the Court further discussed summary judgment and found that:

> 2.      """A motion for summary judgment should be
> granted only when it is clear that there is no genuine issue of
> fact to be tried and inquiry concerning the facts is not desirable
> to clarify the application of the law." Syllabus Point 3, *Aetna
> Casualty & Surety Co. v. Federal Insurance Co. of New York*,
> 148 W. Va. 160, 133 S.E.2d 770 (1963).' Syllabus Point 1,
> *Andrick v. Town of Buckhannon*, 187 W. Va. 706, 421 S.E.2d
> 247 (1992)." Syl. Pt. 2, *Painter v. Peavy*, 192 W. Va. 189, 451
> S.E.2d 755 (1994).
>
> 3.      "The circuit court's function at the summary
> judgment stage is not to weigh the evidence and determine the
> truth of the matter, but is to determine whether there is a
> genuine issue for trial." Syl. Pt. 3, *Painter v. Peavy*, 192 W.
> Va. 189, 451 S.E.2d 755 (1994).
>
> *        *        *
>
> 6.      "Summary judgment is appropriate where the
> record taken as a whole could not lead a rational trier of fact to
> find for the nonmoving party, such as where the nonmoving
> party has failed to make a sufficient showing of an essential
> element of the case that it has the burden to prove." Syl. Pt. 4,
> *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994).

Syllabus Pts. 2, 3, and 6, *Gray*, 233 W. Va. at 245, 757 S.E.2d at 776. With these standards

in mind, we now consider Mr. Scafella's assignments of error.

## III. DISCUSSION

On appeal, Mr. Scafella asserts that the business pursuits exclusion within his Erie policy did not apply and advances three assignments of error, which we will address in turn.

### A. Waiver

In his first assignment of error, Mr. Scafella argues that the circuit court erred in granting Erie and Mr. Geho's motion for summary judgment, as genuine unresolved issues of material fact remain as to whether Erie waived the business pursuits exclusion contained within the policy.

The Supreme Court of Appeals of West Virginia ("SCAWV") has held that "[t]o effect a waiver, there must be evidence which demonstrates that a party has intentionally relinquished a known right." Syl. Pt. 1, in part, *Potesta v. U.S. Fid. & Guar. Co.*, 202 W. Va. 308, 504 S.E.2d 135 (1998). Further, the SCAWV has found, as stated in syllabus point five of *Potesta*, that "[g]enerally, the principles of waiver and estoppel are inoperable to extend insurance coverage beyond the terms of an insurance contract." *Id.* at 311, 504 S.E.2d at 138. The *Potesta* Court additionally noted, in syllabus point seven, as to waiver, that:

> [e]xceptions to the general rule that the doctrine of estoppel may not be used to extend insurance coverage beyond the terms of an insurance contract, include, but are not necessarily limited to, instances where an insured has been prejudiced because: (1) an insurer's, or its agent's, misrepresentation made

> at the policy's inception resulted in the insured being prohibited from procuring the coverage s/he desired; (2) an insurer has represented the insured without a reservation of rights; and (3) the insurer has acted in bad faith.

*Id.* at 311, 504 S.E.2d at 138.

Moreover, it is well settled under West Virginia law that, "[w]here the soliciting agent has knowledge of past conditions or existing facts which at the time would serve to void the policy, the company issuing the policy cannot insist upon such facts for the purpose of avoiding its liability." Syl., *Kimball Ice Co. v. Springfield Fire & Marine Ins. Co.,* 100 W. Va. 728, 132 S.E. 714 (1926). Mr. Scafella contends that, given the SCAWV's rulings in *Potesta* and *Kimball,* a genuine issue of fact remains as to waiver, that the circuit court erred in awarding summary judgment to Erie and Mr. Geho. We disagree.

The facts of *Kimball* are dissimilar to the facts herein. The insurance policy in *Kimball* contained a stipulation that the insurer would not be "liable for loss or damages occurring . . . if the [insured's] manufacturing establishment . . . ceases to be operated beyond a period of ten days." *Id*. at 729, 132 S.E.2d at 715. However, the evidence established that the *Kimball* insurer knew, before issuing the policy, that the insured's manufacturing establishment would not be operational within a period of ten days, thereby invoking the stipulation which held the insurer not liable for loss or damages. Thus, the *Kimball* Court reasoned that "[w]here the soliciting agent has knowledge of past conditions

10

or existing facts which at the time would serve to void the policy, the company issuing the policy, with this knowledge upon the part of its agent, cannot insist upon such facts for the purpose of avoiding its liability." *Id.* at 732, 132 S.E.2d at 716-17.

Unlike *Kimball*, here, there is no evidentiary support for Mr. Scafella's contention that Erie knew or should have known that he was using his property for various business purposes prior to issuing the policy. Further, there is no indication that, under *Potesta*, either the insurer or agent made any misrepresentations at the policy's inception that resulted in Mr. Scafella being prohibited from procuring the coverage he desired, defended Mr. Scafella under a reservation of right, or acted in bad faith, as to "extend insurance coverage beyond terms of an insurance contract." *See Potesta* 202 W. Va. 308, 311, 504 S.E.2d 135, 138. In fact, we, like the circuit court, find that Mr. Scafella's arguments are wholly rebutted by the express notation in the application for insurance coverage he endorsed on April 5, 2017, wherein he "clearly denied (1) any animals, including pets or farm animals, present on the insured premises, and (2) any business or occupational pursuits on the insured premises." *See* A.R. 0311-0316.

We are also unpersuaded by Mr. Scafella's contention that his discussion with his insurance agent about the possibility of farming and keeping livestock on the property at some point in the future was evidence of the insurer having knowledge of his cattle farming business. Here, the record reflects that while Mr. Scafella (through his fiancé) may have initially requested insurance to cover his cattle business upon the subject

11

property by getting a quote that included an incidental farming agreement, it is undisputed that a second quote was requested by Mr. Scafella (again through his fiancé), without the incidental farming endorsement. *See* A.R. at 0298-316. There is no indication that Erie prevented or prohibited Mr. Scafella from procuring an incidental farm endorsement or a commercial general liability policy for the property at issue—in fact, just the opposite occurred; they presented a quote to him including an incidental farm endorsement. Rather, it can be inferred from the record that Mr. Scafella reduced the amount of insurance coverage initially requested as a calculated decision to save money, as the quote for the premiums for his homeowner's insurance with the incidental farm endorsement was higher than the quote without such coverage.

Likewise, we are not persuaded by Mr. Scafella's argument that because Erie insured his contracting business, which had the same mailing address as his personal residence (both before and after his move), that Erie knew he was operating his contracting business from his home. We find this argument to be against the clear weight of the evidence. In the proceedings below, Mr. Scafella's insurance agent averred, in part, that:

> I also sold a 5 star CGL Policy to Mark Scafella d/b/a Marksman Contracting issued December 31, 2015. At the time the homeowner's policy [the policy at dispute herein] was issued to Mr. Scafella, the CGL policy had an insured business location of 3001 City View Drive, Morgantown, WV. On April 25, 2017, the insured amended the mailing address for the CGL policy to 401 Aurora Ave, Terra Alta, WV 26274, but the business location remained unchanged. The CGL [p]olicy was subsequently renewed, but canceled on March 9, 2018 for non-payment.

12

Accordingly, as Mr. Scafella failed to meet his burden to establish waiver, we find no error in the circuit court's award of summary judgment to Erie and Mr. Geho.

## B. Other Structures Provision

Next, Mr. Scafella contends that the circuit court erred when it held the business purpose exclusion contained within the *Other Structures* coverage of the Erie policy excluded fire damage to the large barn. Specifically, Mr. Scafella argues that the court erred by determining that the milk house where Olivia's was located was a part of the large barn structure and was not a separate structure. Following our review of the extensive record, we disagree and find no error.

In considering Mr. Scafella's argument we must first determine whether the terms contained in the policy are clear or subject to interpretation. In *Motorists Mutual Insurance Co. v. Zukoff*, 244 W. Va. 33, 851 S.E.2d 112 (2020), the SCAWV, citing *Payne v. Weston*, 195 W. Va. 502, 507, 466 S.E.2d 161, 166 (1995), noted:

> In West Virginia, insurance policies are controlled by the rules of construction that are applicable to contracts generally. We recognize the well-settled principle of law that this Court will apply, and not interpret, the plain and ordinary meaning of an insurance contract in the absence of ambiguity or some other compelling reason. Our primary concern is to give effect to the plain meaning of the policy and, in doing so, we construe all parts of the document together. We will not rewrite the terms of the policy; instead, we enforce it as written. Syllabus Point 1 of *Russell v. State Automobile Mutual Insurance Company*, 188 W. Va. 81, 422 S.E.2d 803 (1992), states: "'Where the

13

provisions of an insurance policy contract are clear and unambiguous they are not subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended.' Syllabus, *Keffer v. Prudential Ins. Co.*, 153 W. Va. 813, 172 S.E.2d 714 (1970." Thus, we are to ascertain the meaning of the policy as manifested by its language.

The SCAWV has further defined the term ambiguity as "language 'reasonably susceptible of two different meanings' or language 'of such doubtful meaning that reasonable minds might be uncertain or disagree as to its meaning.'" Syl. Pt. 1, in part, *Shamblin v. Nationwide Mut. Ins. Co.*, 175 W. Va. 337, 332 S.E.2d 639 (1985). However, "[t]he mere fact that parties do not agree to the construction of a contract does not render it ambiguous. The question as to whether a contract is ambiguous is a question of law to be determined by the court." Syl. Pt. 1, *Berkeley Cty Pub. Serv. Dist. V. Vitro Corp. of Am.*, 152 W. Va. 252, 162 S.E.2d 189 (1968). The SCAWV has further held that

> a court should read the policy provisions to avoid ambiguities and not torture the language to create them. "'If a court properly determines that the contract is unambiguous on the dispositive issue, it may then properly interpret the contract as a matter of law and grant summary judgment because no interpretive facts are in genuine issue.'" *Williams. v. Precision Coil, Inc.*, 194 W. Va. [52] at 66 n. 26, 459 S.E.2d [329] at 343 n. 26 [(1995)], quoting *Goodman v. Resolution Trust Corp.* 7 F.3d 1123 (4th Cir. 1993). *Payne*, 195 at 507, 466 S.E.2d at 166.

*Zukoff* at 39, 851 S.E.2d at 118.

In the case *sub judice*, Mr. Scafella argues that the failure of Erie to define the term "structure" in the policy renders the policy ambiguous in its application. However,

14

the circuit court found no ambiguity within the Erie policy and determined that Mr. Scafella's argument that the milk house and large barn were two structures was unsupported by the record. The court noted that photographs of the barn and milk house show a "single integrated structure" and that they are not only directly "adjacent to each other, but physically attached together with adjacent common walls." In fact, the court referenced that there is "an entry way or door leading from the milkhouse directly into the main barn area," such that you do not have to exit the structure to go from milkhouse directly to the large barn. We agree with the circuit court's reasoning and conclusion and find that the Other Structures exclusion within the *Other Structures* provision stating that Erie will not pay for loss to structures "used in whole or in part for business purposes," is clear and unambiguous and should be given its ordinary meaning. *See Id. See also*, *Murray v. State Farm Fire and Casualty Company*, 203 W. Va. 477, 490, 509 S.E.2d 1, 14 (1998) (SCAWV reasoned that policy language at issue did not define the term "external," thus the Court found that it must "give the word its 'plain, ordinary meaning.'"). Merriam-Webster defines the term structure as:

> (1) the action of building: construction; (2)(a) something (such as a building) that is constructed, (b) something arranged in a definite pattern of organization; (3) a manner of construction; (4) (a) the arrangement of particles or parts in a substance or body, (b) organization of parts as dominated by the general character of the whole, (c) coherent form or organization; and (5) the aggregate of elements of an entity in their relationships with each other.

"Structure," Merriam-Webster.com https://www.merriam-webster.com/dictionary/structure (last visited Nov. 13, 2023).

Our interpretation is supported by cases from Missouri and Louisiana. In *Winston v. Hartford Fire Ins. Co.*, 317 S.W.2d 23 (Mo. Ct. App. 1958), the Springfield Court of Appeals, Missouri, determined that a later added shed addition attached to a barn was a single structure for purposes of insurance coverage. The *Winston* Court determined whether the two are one depends on a number of things, including whether the addition was erected in such close proximity to the other structure as to be physically joined thereto. Similarly in *McMahon v. People's Nat. Fire Ins. Co.*, 14 Teiss. 269 (La. Ct. App. 1917), the Court of Appeal of Louisiana considered the question of additions and determined that any additions to a building included only such structures that are attached to or structurally connected with the main building. While neither of these cases are determinative, both are persuasive to the notion that when considering if an addition is part of the main structure, factors such as close proximity and physically joined are key considerations.

Based upon our review of the record and the arguments of counsel, we find that the large barn area where the fire occurred and the milk house (where Mr. Scafella operated Olivia's) are one in the same structure. Photographs show that the large barn and milk house are not only adjacent but have abutting walls and share an interior entryway. Likewise, there is no separation between the wall of the barn and the wall of the milk house, suggesting that the milk house is simply a joined addition and part of the large barn. In fact, when providing a recorded statement to Erie after the fire loss, Ms. Smith identified the barn and the milk house as being part of one building. Accordingly, we find that the circuit

16

court did not err in determining that the large barn and milk house are the same structure. As we have determined that the policy is unambiguous on the dispositive issue, per the SCAWV's reasoning in *Williams*, we find that the circuit court did not err in interpreting the contract as a matter of law and awarding summary judgment to Erie and Mr. Geho. *Williams* at 194 at 66 n. 26, 459 S.E.2d at 343 n. 26.

### C. Claw-Back Provision

In his final assignment of error, Mr. Scafella contends that the plain terms of the "claw-back" provision contained within the *Other Structures* coverage under the Erie policy extends to provide coverage for his business property and that the circuit court erred in finding otherwise.

What Mr. Scafella describes as the "claw-back" provision of the Erie policy at issue clearly states that Erie does "not pay for losses to structures" "used to store business property," unless that "business property is solely owned by 'anyone'" Erie protects. In such situations, the claw-back provision provides that Erie does provide coverage for the structure. Mr. Scafella now argues that as the contents stored in the large barn were his business property, which he solely owned, that the "claw-back" provision of the policy triggers and extends coverage to the milk house structure. We disagree and find that the "claw-back" provision is not triggered as the large barn was not used to store Mr. Scafella's business property, but his personal property.

17

There is no dispute that following the fire loss, that as part of his associated insurance claims, that Mr. Scafella identified 120 items stored in the large barn area which he classified as his "personal property," and under the personal property coverage in the Erie policy, Erie issued payment to Mr. Scafella in the amount of $67, 640.80. As Erie and Mr. Geho note, had the contents identified by Mr. Scafella as personal property been deemed "business personal property," the personal property coverage limits would not have been available to him under the policy. *See* A.R. at 0296.

The record supports that the property contained within the barn was categorized by Mr. Scafella as his "personal property." The record reflects that in his response to Erie's *First Set of Requests for Admission, Interrogatories, and Request for Production of Documents to Plaintiff*, that Mr. Scafella replied to Request for Admission No. 3 as follows:

> [Erie's] Request No. 3:   Admit that as of February 2, 2019, the [large barn] located on the subject property was a multi-use barn that included a smaller area for a butcher shop and store, known as "Olivia's," and a larger area for a restaurant and wine and cheese shop, known as "Sophie's Serendipity."
>
> [Mr. Scafella's Response
> to ]Request No. 3:   Deny. The barn was not a multi-use barn. The barn was used to store the personal property of Mark Scafella, for farming activities, and was being renovated with .
> . . ."

18

Further, a review of the Erie claim file notes that on March 15, 2019, Mr. Geho noted that he was advised by Mr. Scafella that the listing of property items he submitted to Erie "were for personal use and not business related." See A.R. at 0415. Mr. Scafella now attempts to place these items in the category of "personal business property" in an attempt to trigger the "claw-back" provision to obtain coverage for the barn structure. In a June 14, 2022, Affidavit, Mr. Scafella averred that the large barn was used to store his "personal business property" belonging solely to him. Further, he averred that "[t]he items of personal business property . . . for which [he] was compensated by Erie following the fire loss were substantially, if not all, personal business property items stored in the fire-damaged barn."

This attempted "reclassification" of the property from personal property to "personal business property" violates the tenets of equitable estoppel. Generally, estoppel applies when a party is induced to act or to refrain from acting to his/her detriment because of his/her reasonable reliance on another party's misrepresentation or concealment of a material fact. *See Hunter v. Christian*, 191 W. Va. 390, 446 S.E.2d 177 **(**1994).

Here, Mr. Scafella represented that the property within the large barn was his personal property to collect $67,640.80 under the personal property coverage in his Erie policy, possibly to avoid the $2,500.00 limit to "business" personal property under the *SPECIAL LIMITS – Personal Property Coverage* section of policy. To permit Mr. Scafella

19

to change his classification of the property at issue to recover under corresponding portions of the policy is impermissible and would permit him a windfall and coverage for which he did not pay. Such prohibition is in line with the SCAWV's ruling in *Potesta*, wherein the Court held that "[g]enerally, the principles of waiver and estoppel are inoperable to extend insurance coverage beyond the terms of an insurance contract." *Id*. at 311, 504 S.E.2d at 138. Accordingly, we find no error in the circuit court's determination that the "claw-back" provision of the policy is not triggered and does not extend to provide additional coverage to Mr. Scafella.

## IV. CONCLUSION

For the foregoing reasons, the September 12, 2022, order of the Circuit Court of Marshall County is affirmed.

Affirmed.